## Lawrence County's Appeal.

1. Persons having no interest in judicial proceedings will not be heard as parties to impugn them for irregularity. .

2. Butler and Lawrence counties, under the same Act of Assembly, each subscribed to the stock of a company whose railroad passed through their territory, and on the same terms and about the same time. *Held*, that there was no implication of a *joint* liability by the two counties, or of a liability to contribute for each other's losses.

3. The bonds issued by the counties in payment for the stock were prohibited by the act from being sold at less than par; the company increased the stipulated prices for the work of their contractors 36 per cent. and paid in bonds at par. *Held*, that this was a fraud on the counties, and entitled them to a rescission of the contract for the stock.

4. The bonds of Lawrence county had been paid out by the company, and she had obtained a decree against the company for their value; a large amount of Butler county's bonds still being in the company's hands, she obtained a decree to have them restored. *Held*, that Butler county having a defence to the bonds on the ground of the fraud in the company, the bonds were not assets for the payment of their debts, and Lawrence county, although a creditor of the company, had no standing in the case and could not appeal.

5. Lawrence county was not a creditor of the company, but a stockholder.

November 16th and 17th 1870. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the decree of the Court of Common Pleas of *Butler county:* In Equity: No. 113, to October and November Term 1870.

The North Western Railroad Company was incorporated February 9th 1853 under the General Railroad Law of 1849, to construct a road from the Pennsylvania Railroad west of Johnstown, by way of Butler, to the Ohio state line at some point on the western line of Lawrence county; the capital to be $1,000,000, with right to increase to $2,000,000, in shares of $50 each, with power to borrow money to an amount equal to the capital, with interest at 7 per cent. per annum, to be secured by mortgage of their railroad and franchises. Authority was given also, to the counties through which the road should pass to subscribe to the

stock and pay in such manner as the counties and the company should agree upon; but when bonds should be given for county subscriptions they should not be sold by the company at less than par. The company was organized about June 1st 1853, and located their road from the Pennsylvania Railroad near Blairsville through Armstrong, Butler, and Lawrence counties. On the 18th of August 1853, Butler county subscribed for 5000 shares of stock ($250,000), to be paid for in bonds due in 20 years from their date, with interest payable semi-annually; the company to pay the interest until the road should be completed. On the 20th of August, Lawrence county subscribed for 4000 shares of stock ($200,000), payable in all respects as the Butler county subscription; the company to pay the interest on the bonds in like manner. The City of Philadelphia also subscribed $750,000 to the stock of the company payable by their bonds. Malone & Co. contracted with the company to construct the entire road, five-sixths of their estimates to be payable monthly in the bonds of the two counties and Philadelphia, *pro ratâ* of the amount those municipalities were to issue, the remainder in stock of the company; and after those bonds should be exhausted, payable in the bonds of the company; all the bonds to be taken at par and the contract to be forfeited at the option of the company on failure by the contractors to perform. The prices of the work were to be fixed by J. E. Thomson and Herman Houpt, Esqrs. They " having taken into consideration the terms and modes of payment," made out a list of prices, which was not satisfactory to the contractors; the company then raised the prices about 24 per cent. above those arranged by Messrs. Thomson and Houpt.

The contractors during the ensuing two years did work to the amount of $1,000,000 from Blairsville to Freeport, $24,000 from Freeport to Butler, and $56,000 from Butler to New Castle; of this sum about $16,000 were expended in Lawrence county. All the bonds of Lawrence and Butler counties were delivered to the company prior to June 12th 1856. The interest on the bonds being in arrear and there being no provision for its payment, they were unavailable to the contractors. The company, in consequence, on the 6th of August 1856, released the contractors from their contract, except a portion of the work between Blairsville and Freeport, they to take for what was then and might become due them, the notes and mortgage bonds of the company, and under the agreement they restored to the company $332,500 of the bonds of the two counties which had been received by them. Some work had been done in Butler and Lawrence counties, and about $2000 of Lawrence county bonds had been expended for work done in Butler county.

On the 2d of April 1857, Butler county filed the original bill in this cause against the company, setting forth her subscription

and issuing of $250,000 in bonds; that the company still held $236,500 of bonds yet undisposed of, were insolvent and unable to comply with their agreement to pay the interest on the bonds, having failed to do so since January 1st 1857, on $13,500 of the bonds disposed of by them, and prayed for an injunction to restrain the company from negotiating any more of the bonds, &c. On the 14th of April, F. W. Higgins, Esq., appeared for the company, and by agreement a preliminary injunction was issued, with leave for the defendants to move at any time for its dissolution. By proceedings under a mortgage given to secure the company's bonds, the railroad and its franchises were sold in July 1857, to William L. Hirst, Esq., for the bondholders. On the 18th of November 1858, the county filed an amended bill, averring that the company had wrongfully released Malone & Co. from their contract to build the roads, had paid out the bonds at 36 per cent. below their par value, and that since the granting of the injunction the company had, in violation of it, paid out an unknown amount of the bonds. The prayer was that the county's subscription to the stock might be declared null, and the bonds delivered up to be cancelled. The company answered, January 12th 1859, that at the granting of the injunction they held but $184,500 of the bonds, that they owed more than that amount, that they needed the bonds to pay their debts, and were unable to pay the interest; they admitted that on account of the depreciation of the bonds in the market, they had so increased the prices to Malone & Co. as to reduce $59,000 of the bonds which they had paid out shortly before the injunction to 64 per cent. of the par value, but that the other bonds which they had disposed of had been paid out at their par value, that the bonds were in the custody of the Commercial Bank of Pennsylvania, and that the company did not design to make any use of them till the injunction should be dissolved.

An act was passed March 22d 1860, creating Mr. Hirst and other bondholders of the North-Western Railroad Company a corporation by the name of The Western Pennsylvania Railroad Company, with all the rights of the North-Western Railroad Company, and all the acts creating the North-Western Railroad Company were repealed and its charter revoked.

On the 5th of April 1860, the plaintiff (Butler county) filed a supplemental bill, making the Commercial Bank a party, and setting out the sale of the North-Western Railroad Company to Mr. Hirst, the repeal of its charter and incorporation of the Western Pennsylvania Railroad Company, and averred that by reason of these things the title of the North-Western Railroad Company to the bonds was destroyed, and that the plaintiff had a right to have them restored and cancelled; the prayer was that this might be done. On the 4th of June 1860, another supplemental bill was filed against the Western Pennsylvania Railroad

Company, alleging that that company claimed these bonds as pur-
chasers of the North-Western Railroad Company. The Western
Pennsylvania Company answered, claiming the ownership of the
bonds by virtue of the purchase of Mr. Hirst.

On the 29th of September 1866, Lawrence county filed a peti-
tion in this cause, which set forth that the petitioner, June 9th
1857, filed in the Supreme Court a bill against the North-Western
Railroad Company, which was so proceeded in that at the October
Term 1858, it was decreed that her subscription to stock in the
company was annulled, without prejudice to the rights of other
parties, &c., that the company return $2000 of bonds still held by
them, and restore the remaining $198,000 of bonds, or pay that sum
to the petitioner, &c. The petition set forth the appointment by
the Supreme Court, February 7th 1866, of A. L. Crawford as re-
ceiver of the company, and that June 23d it was ordered that
the bonds of Butler county, in possession of the Commercial
Bank, should be treated as if in his hands, and that on the same
day Butler county obtained a rule to show cause why she should
not be allowed to take the bonds out of the receiver's hands, re-
turnable to the Western District at October Term 1866; the
prayer of the petition was that Lawrence county might be made
a party to the bill, that the injunctions be dissolved, and the bills
dismissed, and for further relief.

Butler county answered the petition, objecting to Lawrence
county becoming a party, averring that the North-Western Rail-
road Company still held the bonds.

The Court of Common Pleas of Butler county, in October
1866, allowed Lawrence county to become a party defendant, but
refused to dissolve the injunctions and dismiss the bills.

James Veach, Esq., was appointed master.

After fully finding the facts, including those above stated, he
reported that amongst other reasons, Lawrence county resisted
the surrender of the Butler county-bonds to that county, be-
cause Lawrence county is a creditor of the North-Western Rail-
road Company, that the Butler county-bonds are assets of the
company, and must be held for the payment of the company's
debts.

The master reported that whether Lawrence county was or not
a creditor of the North-Western Railroad Company, was of no
importance, as Butler county had an available defence against
their payment. He recommended that a decree be made dismiss-
ing the petition of Lawrence county; that the bonds be delivered
to the county of Butler, and that they be adjudged null and
void.

After exceptions, the Court of Common Pleas of Butler county
confirmed the report of the master, and made a decree according
to his recommendation.

Lawrence county appealed to the Supreme Court, and in a number of specifications assigned the decree for error.

*R. B. McComb*, for appellant.

*J. M. Thompson* and *C. McCandless*, for appellee.

The opinion of the court was delivered, February 9th 1871, by
THOMPSON, C. J.—All inquiry into the regularity of the proceedings of the court below, until we shall have ascertained whether the appellant, the county of Lawrence, has such a *status* in the case as entitles her to move in the matter of the bill, original or as amended, seems out of place. All the other parties embraced by the decree have acquiesced in it, and it is conclusive as to them. If Lawrence county has no equity in the bill, she has no right to question the regularity of proceedings which alone concern other parties; and which if regular, they could have taken advantage of. It is a rule without exception, I believe, that persons having no interest in judicial proceedings, will not be heard as parties to impugn them for irregularity merely, and this must be the condition of this appellant, unless it be made to appear to the judicial mind, in some way, that she was entitled to consideration in the decree made. Now how is this?

We have no doubt whatever that the Court of Common Pleas of Butler county, had jurisdiction of the subject-matter of the bill, and jurisdiction of the parties by service and voluntary appearance.

I need not trace the history of the North Western Railroad Company to its culmination in ruin and insolvency, the source of manifold embarrassments, troubles and losses to sundry individuals, and more than one of the counties of this Commonwealth. This history, so far as it may be necessary to illustrate anything that may be here said, will be the duty of another, if it be thought proper to report the result of our action in the case.

It will therefore suffice to say, that the counties of Butler and Lawrence, each became subscribers to the stock of the defendant company, under the authority of an Act of Assembly of the 9th February 1853, the former to the extent of $250,000, and the latter to $200,000; both on the same terms and conditions as to the time, mode and manner of payment, the payments of interest and restrictions on the sale of the bonds.

Each contracted for the payment of her stock subscription in county bonds, to become due in twenty years from date, with interest payable semi-annually, which the railroad company contracted to pay, with the further stipulation, that the bonds should not be sold by the company at a less rate than par. These stipulations the municipal subscribers were fully authorized to make, by the act authorizing the subscriptions.

The finding of the master shows that the subscriptions of these counties were separately and independently made, without any arrangement between them in regard thereto. Indeed nothing else was ever pretended. Surely the law will not imply any joint liability, from the mere circumstance that these counties subscribed to the same stock, under the same law, and on the same terms. Any liability of the one to contribute to the losses which might be sustained by the other, does not rest in an implication of a contract; there is no ground for such, nor upon any express arrangement, for none is pretended. Besides, there was no authority to make any such, by anybody.

Each county therefore having subscribed, issued bonds and paid its subscriptions by bonds, on the terms referred to above; and the railroad company let the whole of its road to a company of contractors, who agreed to take their bonds, with others, in payment for work to be done. The contractors not being able to negotiate them on the terms agreed upon, to wit, at par, an arrangement was made between the company and its contractors to evade this stipulation, by adding a percentage to the contract price of the work, which should in effect reduce the bonds to about sixty-four cents in the dollar. That is to say, in place of doing one hundred dollars worth of work for a hundred dollars in bonds as agreed, only $64 worth of work would be done. This was a palpable fraud on the counties, and for this precisely, this court declared that the contract of subscription was avoided, in the case of Lawrence County v. The North Western Railroad Company, 8 Casey 144, which case had been preceded by Crawford County v. The Pittsburg and Erie Railroad Company, 8 Casey 141, and Mercer County v. Same, 3 Casey 389, holding that a municipal subscription could be avoided, and was entitled to be rescinded, on account of the fraud of the corporation, and the contracts of subscription declared void, and the bonds ordered to be returned.

The interest not having been paid on the bonds of Butler county, the contractors could not negotiate them, even at this margin of practical reduction, and returned most of those received to the railroad company, in order to enter into different arrangements for raising money. Whilst in this situation, Butler county filed her original bill, praying for an injunction to restrain the re-issue of them, on the ground of the failure of the company to pay interest. A preliminary injunction which covered $184,000 of the bonds returned, was granted, $59,000 of them having been passed away by the company before the service of the injunction. Afterwards the plaintiff amended her bill, charging the company with a violation of one of the fundamental conditions of the subscription, namely, that none of the bonds should be disposed of at a less rate than par. At the time of the return of the Butler county bonds, some $98,000 of Lawrence county bonds were also

returned to the company; but, less fortunate than her neighbor, although she filed a similar bill to restrain the reissue of her bonds, she failed by reason of strenuous opposition and delay, not useful to recite, until in 1859, she got an injunction as prayed. The court granted a perpetual injunction to restrain their re-issue, and rescinded the subscription and ordered those issued to be returned, and their amount in cash to be paid by the company to the county. All the bonds saving only $2000, had disappeared from the treasury of the company by this time. The company some short time after this failed, was utterly insolvent, and it is needless to say the decree has never been complied with. On the 22d March 1860 its charter was repealed, and a new charter granted to another company, the Western Pennsylvania Railroad Company.

Now Lawrence county claims a right to intervene to prevent a final decree in favor of Butler county, that her subscription be declared void by reason of the facts set forth in the bill, viz., non-payment of interest, and contracting and endeavoring to negotiate her bonds at a less rate than par, and because of the actual negotiation of most of them at such less rate. Upon what solid ground can she be successful in this? If I understand it aright, she claims as creditor of the company; and that as to creditors, the plaintiff cannot have a rescission of her contract of subscription and her bonds returned, until she contributes to the amount actually out of pocket by Lawrence county. The postulate for this claim is, that her bonds have gone to pay debts due by the company, therefore she has right to equitable substitution in the place of creditors, to whose debts her means have gone to pay. But she was not a lender to the company of a dollar, and this is the only relation which could with any plausibility be urged as a ground for a substitution as against the company, and through it to its uncollected assets. Lawrence was not a creditor to the company, but a part of it. Her bargain was to pay her subscription, and look for reimbursement through the company by means of the profits it might realize. If a failure to complete such an enterprise should take place, and a sale of its property and assets follow, a stockholder could not be regarded as a creditor entitled to a distribution of proceeds. Creditors, that is the lenders of money, contractors and the like, must be first paid, not the company or any of its members as such. That one stockholder should be the debtor of another by virtue of his stock subscription, is an unheard-of thing. Through the company all stock subscriptions may be collected, and it may be compelled to collect all of them to carry on the enterprise or pay its debts, but not for distribution to stockholders.

It is so manifest, that each takes the risk of gaining or losing to the extent of the stock subscribed, and is not to be reimbursed

from the stock of another or others, that words cannot illustrate it. This is something approaching so nearly a self-evident proposition that it is hardly possible to aid the statement by argument. This being so, Lawrence county has no authority at law or in equity to proceed against a stockholder to reimburse herself for loss by virtue of her subscription. There is no privity in law between them, and none by contract has been shown. If she could have compelled the company to proceed to collect the stock, it would only have been, as I have said above, to carry on the work or pay debts, and then for that purpose only could it have collected subscriptions that were valid, consequently it would have been met, by way of defence, so far as Butler county is concerned, with the very matter she now claims as a ground for a rescission of her subscription, viz., fraud of the company upon her, and which we held in Lawrence County *v.* N. W. Railroad Co. was a good ground for rescission, and is *à fortiori* a good ground of defence. The other cases already cited, show that by the fraud of the company a stock subscription will be rescinded. But Lawrence county has not even the corporation to resort to, to compel delinquent subscribers to pay. Its charter and authority were entirely repealed by the Act of 22d March 1860, and before Lawrence county moved in the matter in this case, and a new company—the Western Pennsylvania—was incorporated in its stead, but without any authority over its stock subscriptions.

This is a hard case on Lawrence county, but she is in the category of thousands of others who have lost by misplaced confidence in untried schemes. This hardship merely will not give form, shape and force to her subscription—which did not inhere in it when it was made. As it has not been found that she was induced to subscribe to the stock of this unfortunate railroad company by any act or contract of Butler county, and as the law implies no equivalent, she is without remedy—in the manner attempted against Butler county—and has no equity to interfere in the manner attempted here to prevent her from redressing her wrongs.

It was claimed, in the able and earnest argument of the counsel for the appellant, that the case In re Cook *v.* Youghal Railway Co., 4 Ch. Ap. Cas. 748, was an authority to support their position. We have looked at the case with care, but we regard it as belonging to an entirely different kind of case from that presented here. In that case, the company became embarrassed and had no authority to raise any more money on mortgage than had been raised under the act of incorporation. Its financial agent, David Leopold Lewis, advanced large sums of money to carry on the enterprise, but himself becoming embarrassed, procured the company to issue a large amount of bonds, called "Lloyd's Bonds," and on these he raised a very considerable amount of money,

which was disbursed in payment of debts of the company; but, with all this assistance, the company went into the hands of a general liquidator. The company, with its property and assets, were sold, and the proceeds came into the liquidator's hands. The bondholders, Mr. Lewis among them, claimed as creditors for a *pro ratâ* on their bonds; this was refused by the liquidator on the ground that the bonds issued were not authorized by Act of Parliament. This was certainly true. The company was prohibited issuing them. The holders of them claimed to stand in the shoes of the creditors of the company, whose debts their money had paid, and this ground was sustained by Lord Chancellor Hatherley, and Lord Justice Gifford, who heard the appeal from the decree of Vice-Chancellor Malins. This was a case of lenders of money to a corporation, which the legal representatives of that corporation wished to pocket for the benefit of the corporation, because of the irregularity of the loan merely. In order to effectuate justice, therefore, equity subrogated the lenders to the rights of the creditors, whose debts had been paid, and refused the claim of the stockholders to any money until the bondholders were satisfied. This was manifestly just, and operated nowhere unjustly. But the case gives no countenance to the idea attempted to be derived from it. It does not at all establish the idea that one stockholder who has lost more than another, can turn upon him and compel him to contribute to his losses as a creditor, more especially when the company could not compel him to pay anything. I cannot see, in anything that has been written or said, why Lawrence county has any superior equity to escape from loss by this company than Butler has. If Butler county had beguiled her into the loss, or promised to share it, or even had given countenance to the doings of the company by management of its affairs, as if all were right in her own case, there might have been more plausibility in the ground assumed by the appellant; but nothing of the kind appears in the case. We think she is not entitled to interpose here in any manner whatever. The case of Henderson *v.* The Royal British Bank, 7 E. & B. 90, Com. Law Rep. 355, was also somewhat relied on as authority for the ground assumed by the appellant's counsel. That was a case under the English "Joint Stock Winding-up Act" of 1848, and supplement of 1849. It is so manifest that this proceeding was under the provisions of a special act relating to joint stock companies in England, that I have not thought it necessary to examine it. But there is a feature of liability under the supposed parallel to this case, which this case is entirely clear of, and which defeats its applicability, even in appearance, to this case. There, a stockholder endeavored to withdraw his name from the register of stockholders and escape liability for stock, on the ground of imposition and fraud on him in making

the subscription.  But this was met by the fact, that after full knowledge of the fraud by the subscriber, he acted as if his stock were free from all taint whatever, voted his shares at elections and received dividends on them, like other shareholders, and it was only when the winding up of the concern took place, he endeavored to escape liability upon his stock, and sought a withdrawal from the register.  It was on this ground that his application was refused.  But Butler county has not been visited with any such equitable estoppel—this we have shown already—and she is not within the principle of this case, even if the Winding-up Act of 11 & 12 Vict. and supplements, eliminated any general principles applicable to corporations generally.

The result of all this is, that the appeal of Lawrence county is dismissed at her costs, and the decree of the court below is affirmed.