## Burns et al. v. Pennsylvania Milk Control Commission

*Douglas & Handler*, for appellants.

*Harter & Daniels*, amici curiae.

RUPP, J., November 17, 1947.—This is an appeal from Official General Order No. A-184 of the Milk Control Commission of Pennsylvania, dated April 24, 1946, and effective May 1, 1946, continuing certain war emergency regulations relating to restricted delivery of milk and milk products in the Philadelphia milk marketing area, area no. 1.

No answer was filed to the appeal petition and the case was not heard by the court. However, counsel entered into a stipulation of facts. The matter is therefore before us on the appeal petition and the stipulation, which incorporates by reference the record certified to the court of the proceedings before the commission on the question of promulgating orders of this type.

Plaintiffs, who constitute the Board of Governors of the Pennsylvania Commercial Drivers Conference, aver that they are prosecuting this appeal on behalf of themselves and on behalf of the officers and members of 51 local unions which constitute the conference (Local No. 463 of the Philadelphia area, which is included in this group also specifically joined in the appeal as a party plaintiff), which labor organizations, under collective bargaining agreements, represent persons employed, either directly or indirectly, in the milk and milk products industry in Pennsylvania who, because their employment is affected by the order and

"as consumers", together with their families, are aggrieved; that the said unions, under such agreements, also represent persons who are employed in the Commonwealth but not in the milk industry but who, because their "economic interests are related to those of each and every other member" of the unions and because of their "interests as consumers", are aggrieved by the order, together with their families; that because and by virtue of certain Federal and State labor relations statutes the unions are the exclusive bargaining agents for the employes of the milk dealers, handlers and distributors regulated by said order and as such agents said unions are the sole representatives of said employes for the purposes of collective bargaining on such matters as wages, hours and working conditions, which includes the days of employment and employment opportunities; that the unions hold many collective bargaining agreements relating to the subject matter of the order and said order impairs the obligations of said contracts and interferes with and restrains collective bargaining on the subject matter contained therein, and interferes with the rights of said local unions vested in them as bargaining representatives aforesaid; that the subject matter of the aforesaid order is a matter which is exclusively within the field of collective bargaining and cannot be withdrawn from the said field by any order or regulation of the commission; and that the order limits, restricts and otherwise impairs the obligations of milk dealers, handlers and distributors of milk to perform their obligations under collective bargaining contracts with said local unions to reëmploy veterans (many of whom have not yet been discharged from the armed services) and also destroys employment opportunities and job security in the industry.

It scarcely need be mentioned that whatever rights plaintiffs may or may not have under other statutes, they have instituted this appeal under the Milk Con-

trol Law of April 28, 1937, P. L. 417, as amended, 31 PS §700j-101, et seq., and therefore their right, if any, to maintain the action must be established under that act.

Section 901 of the Milk Control Law, 31 PS §700j-901, provides as follows:

"Any person aggrieved by an order of the commission fixing, revising or amending the price at, or the terms upon, which milk may be bought or sold, or by any other general action, rule, regulation or order of the commission, may, within twenty (20) days after the effective date of such action, rule, regulation or order, file an appeal therefrom in the Court of Common Pleas of Dauphin County. No such appeal shall be permitted to act as a supersedeas, except on special order of the court. Refusal by the commission of any application, for revision or amendment, filed as provided in section eight hundred one, shall constitute an appealable action within the meaning of this section."

Are plaintiffs persons "aggrieved" by the order, within the meaning of the Milk Control Law?

Unfortunately, the following appears in the stipulation of facts agreed to by the commission:

". . . and said plaintiffs are interested persons within the meaning of the Milk Control Law and are persons aggrieved by the orders hereinafter set forth."

Nothing appears in the commission's brief to explain or sustain this position. However, no citation of authority is required to demonstrate that the commission cannot, by stipulation, grant plaintiffs the right of appeal if they do not possess it, nor preclude the court from considering whether or not plaintiffs possess such a right.

It is self-evident that the right of a labor organization in this matter can rise no higher than the right of the persons whom it allegedly represents. Therefore, the question for our determination becomes, are members of a union who are employed by milk dealers,

handlers and distributors regulated by the order, in their individual capacities, or their labor union, in a representative capacity, "aggrieved", within the meaning of the Milk Control Law, by an order of the commission which allegedly affects their employment; which allegedly interferes with and restrains collective bargaining on the subject matter of the order and interferes with the rights of their labor union as their sole representative for purposes of collective bargaining on such matters, and which allegedly impairs the obligations of certain existing collective bargaining agreements between the union and employers relating to the subject matter of the order?

## Discussion

We neither have discovered, nor have been directed to, any decision of this or any other jurisdiction which posed this exact question. Thus, we must rely on general established legal principles governing "aggrieved" persons and persons having the right of appeal.

In 4 C. J. S. §177, the general rule is stated to be that the interest of a party necessary to entitle him to an appeal must be direct, immediate, pecuniary and substantial; and that an appealable interest in the subject matter exists whenever the interest of the party may be diminished or his rights affected. See also 9 Standard Pa. Practice §107.

In 4 C. J. S. §183b, it is stated:

"In legal acceptation a party or person is aggrieved by a judgment, order, or decree, so as to be entitled to appeal . . . whenever it operates prejudicially and directly upon his property or pecuniary rights or interest, or upon his personal rights, and only when it has such effect. The word 'aggrieved' in a statute . . . refers to a substantial grievance, a denial of some personal or property right, legal or equitable, or the imposition upon a party of a burden or obligation . . .

To render a party aggrieved by an order, so as to entitle him to appeal therefrom, the right invaded must be immediate, not merely some possible, remote consequence. . . ."

To the same effect see 2 Am. Jur. 943 et seq.

The decisions are to the same effect. Thus, in Easton Transit Company's Petition, 270 Pa. 136 (1921) a number of individuals appealed from a lower court decree granting the company's petition for permission to surrender its charter right to operate a railway over a designated portion of its line. The issue was, did appellants, in their individual capacity, have a legal right to appeal?

In quashing the appeal the court said (p. 139) :

". . . It is true, they have an interest in the sense that an abandonment of this portion of the line will deprive them of one of the methods they previously used in traveling to and from their homes; but this is a difference in degree only and not in kind from that of the public generally; and because thereof we have consistently held it does not give to the individual citizen a standing to complain in such matters, even though he suffers a greater damage than any other citizen: Gold v. Phila., 115 Pa. 184; Megargee v. Phila., 153 Pa. 340. It follows that, in the legal sense, appellants are not 'persons . . . aggrieved,' and under the statute no others have a right to appeal: Lawrence County's App., 67 Pa. 87, Singmaster's App., 86 Pa. 169, Gallagher's App., 89 Pa. 29; Appeal of Fidelity Ins., Trust & Safety Deposit Co., 115 Pa. 157; Assigned Estate of Graff, Bennett & Co., 146 Pa. 415."

In Seitz Liquor License Case, 157 Pa. Superior Ct. 553 (1945), the Superior Court had before it the question whether the County Court of Allegheny County had jurisdiction under the Pennsylvania Liquor Control Act to entertain an appeal by a resident property owner from an order of the Liquor Control Board granting a transfer of a restaurant liquor license to a

location near appellant's residence. In sustaining the lower court's action in quashing the appeal the Superior Court pointed out that the right of appeal to lower courts is restricted by the act to applicants aggrieved by the board's refusal to transfer a license. The court concluded that any "interest which appellant had in the outcome of the proceedings before the board was not direct and immediate, but was a collateral concern generated by his desire to protect the value of his property, which might be indirectly affected by the action of the board. This type of interest, however, is too remote from the issues involved in the transfer proceedings to support a right to an appeal."

In State Board of Undertakers et al. v. J. T. Sekula, 339 Pa. 309 (1940) the Funeral Directors' Association of Philadelphia and vicinity, an intervening plaintiff, appealed from a decision of this court setting aside an order of the Board of Undertakers revoking Sekula's license and registration. (The association admittedly intervened for the sole purpose of taking an appeal, if necessary, since the board had no authority to appeal from the final action of this court). In dismissing the appeal the Supreme Court concluded that, in addition to the fact that the association was without statutory authorization to prosecute the appeal, it was a stranger to the proceedings with no direct interest therein.

See also Veon v. Creaton, 138 Pa. 48 (1890), Bradermann v. Pennsylvania Securities Commission, 15 D. & C. 227 (1930), Lansdowne Board of Adjustment's Appeal, 313 Pa. 523 (1934), Levan's Estate, 314 Pa. 274 (1934), Citizens Passenger Railway Co. v. Public Service Commission et al., 271 Pa. 39 (1921), and Devereux Estate, 353 Pa. 560 (1946).

From all the foregoing, it is clear that in the legal sense in order to be aggrieved or in order to have an appealable interest, one must be directly affected by the order appealed from and that his interest must not be a remote consequence of the judgment.

Here, the general order appealed from is capable of directly affecting only "Persons engaged in business as milk dealers, handlers or distributors", "consumers" and producers. Therefore, any effect which it may have upon persons employed by milk dealers, handlers and distributors individually, or upon their representative union, is a remote consequence of the order and is therefore indirect and incidental. It follows that, in a legal sense, neither the employes, in their individual capacities, nor their labor union in its representative capacity, is "aggrieved" within the meaning of the act.

To hold otherwise would be to open the way for appeals by manufacturers of tires, trucks and automobile accessories and for dispensers of oil and gasoline whose sales might be curtailed as a result of the order; for appeals by the employes of such manufacturers or dispensers, either individually or through their union representatives, claiming that their working hours, etc., are affected; and for appeals by countless others as remotely affected as are plaintiffs here. In fact, to hold otherwise would open the way for anyone indirectly and incidentally affected by any order of the commission, individually or through union representatives, to appeal to this court. Obviously, such a result was not contemplated by the act.

And the inevitable aftermath of sustaining the present appeal would be to permit any employe of an undertaker, barber, pharmacist, real estate agent, liquor licensee, etc., etc., either individually or through his union representative, to prosecute an appeal from the revocation of his employer's license, contrary to the settled legal principles and decisions cited above. Likewise, the way would be opened for any rule, regulation or order promulgated by a governmental agency comparable to the commission to be attacked on the ground that it incidentally affects someone's employment or impairs collective bargaining agreements. Further illustration is not necessary.

134

We have not overlooked several allusions in the pleadings to the fact that plaintiffs, as individuals, are consumers. However, nothing appears in the record to support a finding to this effect.

Accordingly, the appeal must be dismissed.

And now, November 17, 1947, the appeal is hereby dismissed.