Pennsylvania Commercial Drivers Conference et al., Appellants, *v.* Pennsylvania Milk Control Commission et al.

478

Argued October 1, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Sidney G. Handler,* with him *Douglass & Handler, Charles J. Ware* and *Earl R. Handler,* for appellants.

*Henry M. Bruner,* with him *T. McKeen Chidsey,* Attorney General, for appellee.

*Morris Duane,* with him *Harold B. Steinberg, John B. Martin* and *Duane, Morris & Heckscher,* for Intervenor, appellee.

*Willis F. Daniels,* with him *Daniels, Harter & Swope* and *Rose Daniels,* for Pennsylvania Milk Dealers Association, Inc., amicus curiæ.

OPINION BY MR. JUSTICE LINN, November 8, 1948:

In appellants' Statement of Questions Involved, three questions are stated for review: (1) May the court below decide that appellants are not persons aggrieved when the Milk Control Commission joined with appellants in stipulating that they were aggrieved? (2) May the court below decide that appellants are not aggrieved by an order which "limits the days when milk can be delivered by dealers employing members of the" appellant labor unions? (3) Is the order limiting delivery days "an unconstitutional exercise of the power delegated to the Commission"?

During the war the federal Office of Defense Transportation, as a measure of conservation, limited retail milk deliveries to every-other-day deliveries and prohibited special deliveries and wholesale Sunday deliveries. After termination of the federal regulations, the Pennsylvania Milk Control Commission [1] on November 1, 1945, published orders continuing these restrictions. The original orders of the Commission became effective November 1, 1945, and expired on April 30, 1946. Prior to expiration the commission held a hearing to determine the advisability of continuing the orders. Appellants appeared before the commission on behalf of 51

---

[1] Concerning the Commission, see generally, *Colteryahn Sanitary Dairy Co. v. Milk Control Commission,* 332 Pa. 15, 1 A. 2d 775 (1938); *Rohrer v. Milk Control Board,* 322 Pa. 257, 186 A. 336 (1936).

local unions representing, for purposes of collective bargaining, persons employed in the delivery of milk throughout the Commonwealth and also on behalf of local union No. 463, representing dairy employes in the Philadelphia area.

Official General Order No. A. 184, the order now before the court, was issued by the commission, continuing for an indefinite period restricted milk deliveries in the Philadelphia Milk Marketing Area. The reasons for this order seem to have been the continued existence of equipment shortages and the decrease in cost to distributors (and also to the consumer) resulting from restricted deliveries. Before the commission the unions contended that the subject matter of deliveries should not be regulated by governmental agencies but should be left to the processes of collective bargaining. Evidence was adduced that returning veterans were being absorbed into employee force but that failure to return to everyday delivery threatened to create an excess labor pool.

The order No. A 184 is a general order applying in the Philadelphia Milk Marketing Area and contains the following: "Section 2 Persons engaged in business as milk dealers, handlers or distributors within the Philadelphia Milk Marketing Area, Area No. 1, are hereby prohibited from transporting, disposing, distributing or delivering, by any means or device whatsoever, milk or milk products to the premises of any retail customer or for the account of any retail customer or retail consumer, more often than once in the 48-hour period, beginning at 12:01 a.m., of each day.

"Section 3 Persons engaged in business as milk dealers, handlers or distributors within the Philadelphia Milk Marketing Area, Area No. 1, are hereby prohibited from transporting, disposing, distributing or delivering on Sundays, by any means or device whatsoever, milk or milk products to the premises of any wholesale customer or for the account of any wholesale customer, unless such deliveries are made with a truck loaded to

capacity with a shipment to one consignee at one point of destination, and with a truck of the usual size ordinarily employed in making such deliveries.

"Section 4  No milk dealer, handler or distributor shall make any special deliveries.

"Section 5  Nothing herein shall be construed to restrict delivery to the premises of any consumer upon a physician's order, provided that a certificate from such physician is filed in the office of the delivering milk dealer, handler or distributor, and made available for inspection to any duly authorized agent of the Pennsylvania Milk Control Commission." It will be observed that, on its face, the order operated directly on milk dealers, handlers or distributors of milk, terms defined in section 103 of the statute.

From that order the appellants appealed to the court of common pleas of Dauphin County. Section 901 of the Milk Control Law [2] provides for appeals from general orders of the commission: "Any person aggrieved . . . by any other general action, rule, regulation or order of the commission, may . . . file an appeal therefrom in the Court of Common Pleas of Dauphin County . . ."

Section 908 provides: "From the decision of a court of common pleas, upon an appeal from a general rule, regulation or order of the commission, an appeal may be taken by either party to the Supreme Court of Pennsylvania in the manner provided by law."

The statute provides for a single as distinguished from a joint appeal to the common pleas. As we understand this record the appeal to the common pleas was joint. The petition for the appeal begins as follows: "The petition of John J. Burns, on behalf of himself, John O'Neal and George A. Matthews, constituting the Board of Governors of the Pennsylvania Commercial

[2] Act of April 28, 1937. P. L. 417, as amended, 31 PS 700j et seq.

Drivers Conference, who, on behalf of themselves, the officers and members of 51 Local Unions chartered by the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, (A. F. L.) affiliated with and making up the said Pennsylvania Commercial Drivers Conference, and on behalf of all other persons similarly interested, respectfully represent . . ."

The petition states "that the Pennsylvania Commercial Drivers Conference is an unincorporated association consisting of 51 local labor unions chartered by the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, (an affiliate of the American Federation of Labor) representing approximately 60,000 members within the Commonwealth of Pennsylvania."[3] They aver that they are acting for the 51 local labor unions just mentioned. Of the 51 local unions, bargaining units throughout the State, only the local union constituting the bargaining unit in the Philadelphia Milk Marketing area, and not mentioned in the amended title, can have even a remote interest in the order because the order does not apply in other parts of the state.[4] The unions operating in other milk areas have no direct interest in the order

---

[3] By agreement, undated, between the commission and counsel for the parties and intervenors the record was amended changing the names of the plaintiffs to "The Pennsylvania Commercial Drivers Conference an unincorporated association consisting of 51 Local Unions chartered by the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (AFL) by Edward J. Hartsough and George A. Matthews, the Board of Governors thereof, as Trustees ad Litem, and Local Union No. 463 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (AFL) an unincorporated association by John B. Backhus, its President as Trustee ad Litem."

[4] It is immaterial, in passing on the joint nature of this appeal, that the same appellants have also taken appeals from the orders applicable in other parts of the State.

applying to the Philadelphia area and have no right to appeal from that order as parties aggrieved by it. The appeal, being a joint appeal, is not saved by setting up an agent to take the appeal. The statute confers the right of appeal upon "any person aggrieved." The appellants have taken a joint appeal. As the statute does not provide for a joint appeal, their appeal is unauthorized and for that reason may be quashed. As we agree with the learned court below that appellants are not aggrieved and therefore not entitled to appeal we shall not quash merely because the joint appeal is unauthorized; we prefer, in the circumstances, to treat the case as though appellants had elected to discontinue as to all but a single appellant as was done in *Schuetz's Estate,* 315 Pa. 105, 113, 172 A. 865, 868 (1934).

There is nothing to show that any of appellants is adversely affected by the order in the sense that he can be a person aggrieved by it within the meaning of section 901. The restriction of the right of appeal to persons aggrieved is as old as paragraph 9 of the Act of May 22, 1722, 1 Sm. L. 131, 12 PS 1091. See *Lawrence County's Appeal,* 67 Pa. 87 (1870); *Devereux Estate,* 353 Pa. 560, 46 A. 2d 168 (1946); *Musser's Estate,* 341 Pa. 1, 17 A. 2d 411 (1941); *State Board of Undertakers v. Joseph T. Sekula Funeral Homes, Inc.,* 339 Pa. 309, 14 A. 2d 308 (1940); *Easton Transit Company's Petition,* 270 Pa. 136, 112 A. 917 (1921); *Estate of Graff, Bennett & Co.,* 146 Pa. 415, 23 A. 397 (1891); *Appeal of The Fidelity Insurance Trust and Safe Deposit Co. et al.,* 115 Pa. 157, 10 A. 37 (1886); *Gallagher's Appeal,* 89 Pa. 29 (1879); *Singmaster's Appeal,* 86 Pa. 169 (1878); *Seitz Liquor License Case,* 157 Pa. Superior Ct. 553, 43 A. 2d 547 (1945). In *Lansdowne Borough Board of Adjustment's Appeal,* 313 Pa. 523, 525, 170 A. 867, 868 (1934) the controlling principle was stated to be: "A cardinal principle, which applies alike to every person desiring to appeal, whether a party to the record or not, is that he must have a direct interest in the subject-

matter of the particular litigation, otherwise he can have no standing to appeal. And not only must a party desiring to appeal have a direct interest in the particular question litigated, but his interest must be immediate and pecuniary, and not a remote consequence of the judgment. The interest must also be substantial."

The appellants' interest is stated by Mr. McDevitt, a witness called on their behalf. "Q. Will you state what your interest is in these proceedings? A. Our interest in the proceedings is first to make clear as far as the federation is concerned we have no objection to a continuation of the every-other-day delivery as we understand it, but rather to register an objection to any governmental agency attempting to regulate anything that is normally handled through the processes of collective bargaining. Q. And you feel that matters relating to the days upon which a man can work and the length of their work week and other factors relating to hours and working conditions are purely within the field of free collective bargaining? A. Very definitely." But that interest in this proceeding is obviously not a direct interest, but an interest that is too remote to constitute a person aggrieved; it is not an interest that at the time the order was made was the subject of pecuniary consideration to appellants in any collective bargaining then in process; it may never become a subject of such consideration and therefore does not constitute a substantial interest in this proceeding affecting appellants. As the learned court below pointed out, "Here, the general order appealed from is capable of directly affecting only 'Persons engaged in business as milk dealers, handlers or distributors', 'consumers' and producers. Therefore, any effect which it may have upon persons employed by milk dealers, handlers and distributors individually, or upon their representative union, is a remote consequence of the order and is therefore indirect and incidental . . ."

Appellants contended that because the commission joined with them in a stipulation [5] stating that they were parties aggrieved, the agreement prevented the common pleas from considering whether they were aggrieved. That position cannot be supported; it is elementary that jurisdiction over the subject matter—the right to enter upon the inquiry—cannot, by agreement of the parties, be conferred on a court on which a statute has not conferred such jurisdiction: compare *Erie City et al. v. Phillips,* 323 Pa. 557, 559, 187 A. 203 (1936); *Rebmann's Estate,* 338 Pa. 120, 12 A. 2d 350 (1940); *Estate of Sanford v. Commissioner of Internal Revenue,* 308 U. S. 39, 50-51, 60 Sup. Ct. 51, 59, 84 L. Ed. 20, 26 (1939).

The third question proposed by appellants for consideration was their constitutional objection. Having shown that they are not qualified to appeal, it is unnecessary to consider the objection; the familiar rule is that a party not affected by a constitutional issue may not call for its decision: compare *Knowle's Estate,* 295 Pa. 571, 592, 145 A. 797, 804 (1929).

Order affirmed at appellants' costs.

---

[5] The stipulation contained the following: ". . . the said plaintiffs are interested persons within the meaning of the Milk Control Law and are persons aggrieved by the Orders hereinafter set forth."