## Kelly et ux. v. Board of Supervisors of Whitemarsh Township

*Jesse W. Beeghley, Jr.,* and *William J. Woolston,* for appellants.

*Elmer L. Menges,* for township.

CORSON, J., November 30, 1954.—Pursuant to the Act of May 24, 1951, P. L. 370, sec. 16, 53 PS §§19093-1251 et seq., the Supervisors of Whitemarsh Township enacted a land subdivision ordinance and implementing regulations.

In accordance with the authority granted by the ordinance (which is attached to and made part of the complaint) the board of supervisors of the township heard and refused an application to subdivide. The proposed subdivision was presented by petitioners Thomas and Florence Kelly, who wish to purchase some three acres of the land of William J. Woolston, Esq. Woolston represented petitioners before the board of supervisors and before this court on appeal.

The Act of May 24, 1951, P. L. 370, by its definition (53 PS §19093-1254), and section 2 of the township ordinance specifically include such a limited land division as contemplated here within the meaning of "subdivision". Therefore, before Woolston could sell to petitioners the board had to approve plans submitted to it in compliance with the regulations enacted by the supervisors. As already noted, permission to subdivide was denied. "In the event such a plan is disapproved, the reasons therefor shall be set forth in writing and given to the applicant". This requirement, found in sections 19093-1255 and 1256(a), has not been fulfilled. Why was the subdivision plan rejected? From an examination of the testimony, particularly that of Michael J. Laputka, secretary-treasurer of Whitemarsh Township, it would appear that the rejection was based on two requirements of the township ordinances and regulations.

First, the lot, being located in an area zoned Triple-A, must have a minimum of 150 feet frontage on an improved road. Section 6 of the subdivision regulations apparently incorporates this requirement. But petitioners' exhibit B clearly shows that the lot which

the Kellys desire to buy has no frontage on an improved road. Indeed, a purchaser of the lot would have very limited access to such a road by means of a 50-foot square block of land opening onto a 20-foot wide lane over which the owner of the lot in question would have an easement. The lane or driveway is approximately 300 feet long and would be the Kelleys' only means of ingress and egress from their property to an improved road—Barren Hill Road.

Second, no plans conforming to the requirements of the subdivision regulations were ever submitted either by petitioners or the owner of the land.

While it is true that this court, on such a petition as is before us, shall hear the matter de novo, section 19093-1256(f), nevertheless, the orderly procedure of the statute first requires that the board of supervisors hear and decide. If they turn down the proposed subdivision, then they must set forth the reasons in writing. Obviously, the local township authorities are more familiar with the requirements of their ordinances and more acutely aware of their land development problems than this court. In the event that an applicant fails to comply with some of the requirements of the statute, ordinance or regulations, he should be given notice of these defects and an opportunity to cure them and comply with all reasonable requirements. The court should not be burdened with time-consuming, needless appeals where the cause of such appeals might be eliminated if pointed out.

In his brief counsel for the township has also argued that the Kellys are not proper parties, that it is Woolston who seeks to subdivide, and that the Kellys only desire to buy. This contention is supported by an examination of the petition and notes of testimony which indicate that no agreement of sale has been signed, and thus the Kellys are not even equitable owners of the lot in question.

The logical import of the statute, ordinance and regulations is that the owner of the land to be divided, the subdivider, is the one who presents the·plan, makes the application and petitions the court for hearing de novo if his plan is refused. Furthermore, there is a serious question as to whether or not the Kellys are "person[s] aggrieved" as this term is used in sections §19093-1256(*f*), the section which is petitioners' authority for this appeal to the court of quarter sessions.

Who is a "person aggrieved"? This phrase, as used in the land subdivision article, first enacted in 1951, is not defined therein by the legislature and does not appear to have been interpreted by the courts. However, numerous cases have discussed and defined the phrase as it is used in other statutes or contexts.

In Pennsylvania Commercial Drivers Conference et al., v. Pennsylvania Milk Control Commission et al., 360 Pa. 477 (1948), the Supreme Court dealt with the right to appeal under section 901 of the Milk Control Law of April 28, 1937, P. L. 417. That section employs the identical phrase now in question—"any person aggrieved". The court said, at page 483:

"The restriction of the right of appeal to persons aggrieved is as old as paragraph 9 of the Act of May 22, 1722, Sm. L. 131, 12 P.S. 1091." (This act authorizes persons aggrieved by judgments of the courts of record to take appeals.)

Then, after citing eleven cases which dealt with the phrase "person[s] aggrieved", the Supreme Court goes on to quote from a twelfth case:

" 'A cardinal principle, which applies alike to every person desiring to appeal, whether a party to the record or not, is that he must have a direct interest in the subject-matter of the particular litigation, otherwise he can have no standing to appeal. And not only must a party desiring to appeal have a direct interest in the particular question litigated, but his interest must

be *immediate and pecuniary* and not a remote consequence of the judgment' ": Lansdowne Borough Board of Adjustment's Appeal, 313 Pa. 523, 525 (1934). (Italics supplied.)

In 4 C. J. S., Appeal and Error, §183 (*b*) it is stated that:

". . . a party or person is aggrieved by a judgment, order, or decree . . . whenever it operates prejudicially and directly upon his property or pecuniary rights or interest . . . The word 'aggrieved' in a statute . . . refers to a substantial grievance, a denial of some personal or property right, legal or equitable."

This principle appears to be the basis of the courts' denials of the parties' rights to appeal in Easton Transit Company's Petition, 270 Pa. 136, 139 (1921), and in Burns et al. v. Pennsylvania Milk Control Commission, 63 D. & C. 126 (1947). It is hard to see in what way the refusal of the Woolston subdivision plan affects petitioners' "legal or equitable" rights in this case, nor is their grievance "substantial" or "immediate and pecuniary".

It might well be that if the Kellys could show a bona fide contract of sale or a detrimental change in position they could validly present this petition and appeal. But they have not abandoned a home or otherwise given up substantial property interests in reliance upon or in anticipation of acquiring this home site. Petitioners are being evicted from their present home in the township. Any injury to their legal or property rights in the denial of an opportunity to buy this lot is, at most, speculative.

However, even if we were to accept the Kellys as persons aggrieved, and assuming that the subdivision plan had been otherwise properly presented, this court would not be willing to decide the constitutional questions raised by petitioners because the reasons for the board's refusal have not properly been set forth and

the area of attack precisely defined. A nebulous challenge of unconstitutionality supported only by mere citation of numerous cases in which the Supreme Court has met and discussed constitutional attacks on zoning ordinances and regulations does not properly present the problems for the court's decision. While it is true that in some cases the court might have to face the constitutional issue, so vaguely presented, this is not such a case. The board of supervisors has not complied with the statute and petitioners, even if they be proper, have not strictly complied with the provisions of the township regulations despite the mandate of section 19093-1253. To render a decision, indeed even to discuss, the constitutionality of the ordinance and regulations might well be unnecessary and purely advisory. It is not the function of this court to decide issues not squarely before it or otherwise hand down advisory opinions, especially where the court entertains such serious doubt as to whether petitioners are the proper parties to bring this appeal.

Therefore, lacking the required written decision of the board of supervisors and because it would appear that petitioners also have not strictly complied with the statute and regulations, the court is in no position to render a decision in this matter. Furthermore, based on the foregoing discussion of "person aggrieved", it is this court's conclusion that the Kellys were not the proper parties to appeal from the decision of the board. It is of no concern to this court that they were parties to the proceedings below, for we are dealing with the provisions of a statute creating the right to appeal to this court from the decision of an administrative agency. Section 53 PS §19093-1256(f) confers jurisdiction on this court and authorizes "any person aggrieved" by the disapproval of a subdivision plan to appeal. We do not believe that the inconvenience suffered by the Kellys brings them within even a broad

interpretation of the statute, and based on the facts averred in the petition and drawn from the testimony, we hold that the Kellys are not "person[s] aggrieved".

In the event that William Woolston, Esq., should decide to present further plans or appeal from the refusal of the board of August 19, 1954, both parties to the dispute, the *township as well as appellant*, should fully comply with the mandates of the statute before again petitioning this court.

And now, November 30, 1954, it is ordered, adjudged and decreed that the appeal of Thomas and Florence Kelly be and is dismissed without prejudice to any further proceedings that may be brought to have the proposed subdivision approved.