## State Board of Funeral Directors v. Fryer

*Dougherty, Larrimer & Lee,* for appellants.

*Walter E. Alessandroni,* Attorney General, *Robert S. Robbins,* Assistant Attorney General, and *Charles A. Woods, Jr.,* Deputy Attorney General, for State Board of Funeral Directors.

KREIDER, P. J., August 30, 1965.—This is an appeal by respondents pursuant to the Administrative Agency Law of June 4, 1945, P. L. 1388, sec. 41, 71 PS §1710.41, et seq., from an adjudication and order of the State Board of Funeral Directors which concludes that certain advertisements of respondents were misleading within the meaning of the Funeral Director Law of January 14, 1951, P. L. (1952), 1898, sec. 11 (4), 63 PS §479.11. The order of the board, while not revoking or suspending respondents' license, nevertheless impliedly enjoins them from advertising in a like manner in the future under penalty of suspension or revocation of license. The order is as follows:

"AND NOW, to wit: this first day of June, 1964, after considering all of the evidence, the Fryer Funeral Home and Robert B. Fryer are found to be in violation of the Funeral Director Law and the Rules and Regulations of the Funeral Directors Board for which their licenses could be suspended or revoked; however, since the Board finds that their actions were not wilful

but based upon faulty advice, the Board hereby suspends the imposition of any penalty but directs that these proceedings be spread upon the records of the State Board of Funeral Directors so that at any future date if Respondents again engage in such activities this or any future Board may be aware that Respondents are then acting in full knowledge of the effect of their acts."

Respondents assert in this appeal that the board did not receive credible and substantial evidence necessary to support a finding of misleading advertising. The board, on the other hand, contends that since the license was neither suspended nor revoked, respondents are not aggrieved parties, and, therefore, have no standing to prosecute this appeal; and further, that there was substantial evidence to support the board's adjudication and order. After a careful reading and consideration of the record, we are unable to agree with either of the board's contentions.

The first question to be resolved is whether respondents have a sufficiently direct interest in the case to give them standing as aggrieved parties to prosecute an appeal to this court. The Administrative Agency Law, sec. 41, supra, provides that:

"Within thirty days after the service of an adjudication . . . any person aggrieved thereby who has a direct interest in such adjudication shall have the right to appeal therefrom."

Petition for Associated Theatres, 27 D. & C. 2d 537, 78 Dauph. 266 (1962), was a case in which Judge Swope of this court considered the right of a stranger to the proceedings to prosecute an appeal from the Industrial Board's decision granting a permit to reopen a motion picture theatre. There, the court reviewed the cases which provide the standard for determining who is an aggrieved party. The requisites are that such a party be a person ". . . affected by a

decision of an agency, who has an immediate and direct interest therein and is aggrieved thereby, . . .", State Board of Funeral Directors v. Beaver County Funeral Directors Association, 10 D. & C. 2d 704, 70 Dauph. 118 (1957) Neely, J., and that the interest of the party not be so remote as to remain unaffected.

". . . 'A cardinal principle, which applies alike to every person desiring to appeal, whether a party to the record or not, is that he must have a direct interest in the subject-matter of the particular litigation, otherwise he can have no standing to appeal. And not only must a party desiring to appeal have a direct interest in the particular question litigated, but his interest must be immediate and pecuniary, and not a remote consequence of the judgment. The interest must also be substantial' ": Pennsylvania Commercial Drivers Conference v. Pennsylvania Milk Control Commission, 360 Pa. 477, 483-484 (1948), citing Lansdowne Borough Board of Adjustment's Appeal, 313 Pa. 523, 525 (1934).

In Roullard v. McSoley, 54 R. I. 232, 172 Atl. 326, (1934), it was held that a party was aggrieved when a judgment or decree "operates on his right of property or bears directly on his interest; that the word 'aggrieved' refers to a substantial grievance, a denial of some personal or property right, or the imposition upon a party of a burden or obligation."

In Sheets v. Benevolent and Protective Order of Keglers, 34 Wash. 2d 851, 210 P. 2d 690, 692 (1949), the word "aggrieved" was held to refer "to a substantial grievance, a denial of some personal or property right, legal or equitable, or the imposition on a party of a burden or obligation; . . . the right invaded must be immediate, not merely some possible, remote consequence." Citing 4 C.J.S., Appeal and Error, §183 b(1), p. 559.

Does the order of the State Board of Funeral Direc-

tors materially affect the property rights or pecuniary interests of the respondents or impose a burden or obligation upon them? The board argues that its order has no such effect and that it is only a reprimand. In its brief it avers: "If anything, *the Board's action* herein amounts to *a complete exoneration* of appellants because the Board recognized that appellants' acts were not willful but based upon improper advice. Thus appellants are attempting to persuade us that they are aggrieved by this Adjudication when if anything, *they won their case before the Board*."[1] We cannot agree with the board's construction of the supposed innocuous effect of its order, which is a public record. It could hardly be contended that if a lawyer were to be found guilty of unethical conduct by a board of censors or a court, he could be deprived of his right to have such a finding reviewed merely because he had been reprimanded, rather than suspended or disbarred.

We are of the opinion that the mere fact that the board did not impose a suspension or revocation of license does not deprive the respondents of their status as aggrieved parties, in view of the board's definitive finding that the respondents violated the law.

There remains the question whether there was substantial evidence to support the board's findings of fact, conclusions and order. In reviewing the adjudication of an administrative agency, the court is limited in its scope of review. It cannot, on the basis of the record, retry the issues or reverse the board simply because it disagrees with the decision. If an issue on which reasonable minds may differ has been fairly presented and adjudicated before an agency, the court will not interfere with such agency's exercise of discretion. But the court can inspect the record to determine whether there was an abuse of discretion, or whether there was presented evidence sufficient to

---

[1] Emphasis throughout ours unless otherwise noted.

substantiate the board's findings. Section 44 of the Administrative Agency Law requires that the agency's findings of fact be supported by substantial evidence.

Mr. Justice (afterwards Chief Justice) Horace Stern made a frequently quoted pronouncement on this subject in Pennsylvania Labor Relations Board v. Kaufmann Department Stores Inc., 345 Pa. 398, 400 (1942):

"Upon judicial review, however, it is the duty of the court to determine whether the findings of the board are supported by the substantial and legally credible evidence required by the statute and whether the conclusions deduced therefrom are reasonable and not capricious. All orders and decrees of legal tribunals, including those of administrative boards and commissions, must be supported by evidence sufficient to convince a reasonable mind to a fair degree of certainty; otherwise our vaunted system of justice would rest upon nothing higher than arbitrary edicts of its administrators. 'Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion': Consolidated Edison Co. v. National Labor Relations Board, 305 U. S. 197, 229. 'Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established': National Labor Relations Board v. Columbian Enameling & Stamping Co., 306 U. S. 292, 300. 'The rule of substantial evidence is one of fundamental importance and is the dividing line between law and arbitrary power': . . . ."

The question here is whether the evidence produced before the board justified, in the light of the above principles, the board's conclusion that the respondents violated the Funeral Director Law and the board's regulations with respect to misleading advertising. We are not concerned with the quantity of evidence but

with determining what facts the evidence actually established. Respondents' advertisements are the subject of the board's findings of fact nos. 4 to 12, inclusive. They are succinctly summarized by the board in its finding of fact no. 13:

"That there is no factual basis for Respondents' allegations that the Fryer Funeral Home is the largest in a 12 mile area of Bridgeville, that it does the largest volume of business in the area, or that it can offer better or less expensive service to the families in the area which it serves."

These advertisements thus constitute the sole basis for the board's conclusion[2] that respondents engaged in "misleading advertising."

It is noteworthy that at the board's hearing there was practically no conflict of testimony requiring reconciliation or choice as to credibility. Edward Patrick testified that as Executive Secretary of the Allegheny County Funeral Directors' Association, he had forwarded to the State Board of Funeral Directors copies of the newspaper advertisements complained of. Walter Sperling, an inspector for the State Board of Funeral Directors, testified that he was familiar with the Fryer Funeral Home in Bridgeville and with various other funeral homes in that area, and that some of the latter were of the same size or larger than the Fryer Funeral Home. Mr. Sperling's testimony was introduced to show that Fryer Funeral Home was not the largest in a 12-mile area surounding Bridgeville, as advertised by the respondents. However, on crossex-

---

[2] The board's "Conclusions" are thus set forth in its adjudication:

"The advertising of the Fryer Funeral Home as set forth in Findings of Fact 4 through 12 inclusive are in violation of Regulations 15.1, 15.2 and 16.1 of the Funeral Directors Board and constitute misleading advertising within the meaning of Section 11 (4) of the Funeral Director Law for which the license of both respondents could be suspended or revoked."

amination the witness said *he did not know* the area of building floor space nor the area of land covered by the Fryer Funeral Home, *nor the amount of business done there,* nor the dollar volume of its business. Consequently, there appears to have been no legally credible basis for Sperling's testimony in this regard.

The burden of proof is not on respondents to prove that the advertisements were not misleading, but on the board to "convince a reasonable mind to a fair degree of certainty" that respondents' advertisements were in fact misleading. In the Kaufmann case, supra, the issue was whether there was in the record the substantial and legally credible evidence necessary to allow the finding of the Pennsylvania Labor Relations Board that Kaufmann Department Stores had discharged an employee, one Richards, for his union activities rather than in the course of the normal operation of the store. Mr. Justice Stern there said, page 405:

"The board was in error in stating that, under the circumstances, 'it was necessary for the respondent to explain in a satisfactory manner why Richards was discharged.' On the contrary, as Kaufmann Stores had the right to discharge Richards and gave a lawful, normal readily comprehensible reason for that action, *the burden was upon Richards, the local, or the board* to prove by substantial and legally credible evidence that the real motive of Kaufmann Stores was an improper one and that the discharge of Richards constituted, directly or indirectly, an unfair labor practice within the meaning of the act: . . . ." (Italics supplied.)

In the instant case, there is no doubt that Fryer Funeral Home had a legal right to advertise its services to the public. We believe it follows that any party complaining that such advertising was misleading had the burden of proving that it was in violation of the law. The board, however, has taken the position that

". . . the Board's Findings of Fact rest not only on testimony adduced at the hearing, but from the very language of the advertising". Little of the evidence appears to relate to this question or to prove anything, and some of that which is relevant is favorable to the respondents. George H. Schnake, vice president of the advertising agency Fuller, Smith and Ross of Pittsburgh and a specialist in the field of advertising, testified that in his opinion the respondents' advertisements were not misleading.[3]

The evidence offered did not show that these advertisements misled or deceived anyone. The board has drawn the conclusion, from an inspection of the advertisements themselves, without more, that they were "misleading," but has not shown in its findings of fact who was misled, nor how, nor to what extent. Considering the record in its entirety, we think the substantial and legally credible evidence standard required by our Supreme Court was not met in this case.

Although we are obliged to sustain this appeal for evidentiary reasons, we are not to be understood as condoning unseemly "puffing" by funeral directors unduly extolling the alleged merits of their services and facilities. The Pennsylvania Board of Funeral Directors is required by the law of this Commonwealth to see that the public is not imposed upon by misleading advertising. In the sensitive profession in which funeral directors are engaged, modesty and good taste in their public relations still remain valuable assets.

And now, August 30, 1965, respondents' appeal from the adjudication and order of the Pennsylvania State Board of Funeral Directors dated June 1, 1964 is sustained, and the said order is vacated and set aside.

---

[3] This opinion was elicited after thorough examination of the qualifications of the witness which revealed extensive experience, culminating in his present position as one of the supervisors of the fourteenth or fifteenth largest advertising agency in the United States.