## Ambridge Motor Coach Co. Appeal

*Reed, Ewing & Ray,* for appellant.

*George L. Reed,* for Pennsylvania Labor Relations Board.

McCREARY, P. J., July 6, 1950.—We have before us for consideration a petition filed by the Ambridge Motor Coach Company to obtain a review of a final order of the Pennsylvania Labor Relations Board dismissing the exceptions to a nisi order of certification and making the order absolute.

Transport Workers of America, C. I. O., hereinafter called the union, and Ambridge Motor Coach Company, hereinafter called the company, filed a petition for a consent election with the Pennsylvania Labor Rela-

tions Board, and on October 19, 1949, the board issued an order directing the election and fixed October 26, 1949, as the date thereof. An employe named Michael Perza, whose name was not on the list of eligible voters, requested a ballot and the director of elections permitted him to mark a ballot. This ballot was seggregated from the other ballots by being placed in a sealed envelope for the determination of the board as to whether the envelope should be opened and the ballot counted. On November 14, 1949, the board issued an order directing the taking of testimony limited to the issue whether Michael Perza was, on October 26, 1949, an employe of the company within the bargaining unit.

After the taking of testimony pursuant to the order of November 14, 1949, the board issued a nisi decision and order on January 5, 1950, finding facts and stating conclusions, and certifying the union as having been selected and designated by a majority of the employes in the bargaining unit as the collective bargaining representative. Exceptions were filed by the company to this order, and oral argument thereon was held before the board on February 21, 1950. The board issued its final decision and order on March 13, 1950, dismissing the exceptions to the nisi order of certification and making the order absolute and final.

On March 27, 1950, this court issued an order granting an appeal from the final order of the board.

As appears by reference to the nisi order of certification the board certified a list of 20 employes of the company as eligible to vote at the election. The name of Michael Perza did not appear on the eligible list. At the election ballots were cast by 19 eligible employes, excluding the ballot which was marked by Perza. The 19 legal ballots were canvassed and it was shown that 10 ballots were in favor of representation

by the union and nine ballots were against representation.

It is apparent that the ballot of Perza, if counted, could determine the result of the election. If the envelope should be opened and the ballot found to be in favor of the union, the result would be 11 votes in favor of representation by the union, and nine votes against representation. On the other hand, if the ballot of Perza should be found to be a vote "No", there would be 10 votes in favor of the union and 10 votes against representation and the board could not certify the union as the bargaining representative because it had failed to secure a majority of the votes of the employes who had voted: National Labor Relations Board v. A. J. Tower Co., 152 F. (2d) 275, 279.

In the petition for consent election the company and the union had suggested in paragraph 4 that "the unit appropriate for the purpose of collective bargaining . . . is a subdivision of the bus service unit and comprises steady employes employed in the Ambridge Terminal Garage exclusive of clerical employes". In paragraph 8 it is averred that "attached hereto and made a part hereof is a list of employes of the employer representing the nearest payroll to October 15, 1949, which contains the names of the employes of the employer in an appropriate unit consisting of steady employes of the bus terminal exclusive of clerical employes having the right to hire or discharge or otherwise affect the status of other employes".

Obviously, if Perza was on October 15, 1949, the payroll date and the date of the election, a rank and file steady employe of the bus terminal, the envelope should be opened and the ballot counted. On the other hand, if Perza was on those dates a supervisory employe, the board, in the exercise of a proper administrative discretion, refused to open the envelope and count the ballot.

In its final decision and order the board said:

"We are convinced that *the evidence establishes that Mr. Perza is a supervisory employe within our customary definition of that term. Accordingly, he was properly excluded from voting at the election which was conducted on October 26, 1949.*"

The board properly found from the evidence that Perza was a "supervisory employee" within the meaning of the Pennsylvania Labor Relations Act. Paraniuk, the manager, says that he became acting manager about September 1, 1949, and before that he had been the "dispatcher". He admits that part of Perza's duties were "dispatching", and that the present status of Perza was the same as his own had been before he became acting manager.

Perza says that he is the "dispatcher" and that his duties are to see that drivers make their scheduled runs. In addition, he reschedules runs if necessary.

E. F. Kimmel, who is an employe of Management Controls, Inc., a corporation organized for the purpose of furnishing certain supervisory services to the company and in addition to the Beaver Valley Motor Coach, testified as follows:

"Q. When Mr. Cole was moved to Elmira under those circumstances was Mr. Paraniuk's job changed at Ambridge Motor Coach Company?

"A. Mr. Paraniuk had been a dispatcher at the Ambridge Motor Coach Company. Mr. Paraniuk was advanced to acting manager at the time for the same period that Mr. Cole was sent to Elmira.

"Q. When that change was made, was any change made in Mike Perza's duties?

"A. Mike Perza was advanced from his duties as a driver to the former duties of Paraniuk's in the office, except that he was not placed on salary. He is a rate employee. . . .

"Q. And, is it the understanding of everybody that if Mr. Cole remains and is left in Elmira, you still may have another manager at Ambridge besides Paraniuk?

"A. Yes. The thing is all a temporary basis entirely there. If Paraniuk doesn't work at Ambridge, even if Cole may remain in Elmira, he understands that he may be replaced as manager at Ambridge.

"Q. And, if he doesn't become manager, will he revert to dispatcher?

"A. Yes.

"Q. And, if he does, will there be any work for Perza to perform?

"A. No, he will go back to his former status as a driver.

"Q. No one knows presently what Perza's duties will be in the next six months?

"A. That is correct."

Hence it is obvious that since September 1949 Perza has been the "dispatcher" of the company and he will be so employed for an indefinite period.

Authorities need not be multiplied which prove that a "dispatcher" is a supervisory employe who is properly included in a unit composed exclusively of supervisory employes and is improperly included in a unit of rank and file employes. In the case of In re Harmony Short Line Motor Transportation Company, 42 N. L. R. B. 757, 759 (1942), it was ruled that dispatchers whose employment is similar to that of Perza are supervisory employes.

Directly in point is Supervisory Employees Union v. Pittsburgh Rys. Co., 93 Pitts. L. J. 47. In that case the issue before the Court of Common Pleas of Allegheny County was whether supervisory employes, including the dispatchers, constitute a unit appropriate for collective bargaining. All rank and file employes had been excluded from the unit. It was said by Judge Egan (p. 48):

"It is admitted that Division 1327 is a labor organization within the meaning of the act, but it does not follow that it should be certified as the collective bargaining representative of the members who are supervisory employees of the Pittsburgh Railways Company. That is a matter for the Board's determination. Petitioner contends that the board was without authority to find that Division 1327 is not a proper bargaining unit for the employees which it represents.

"The Board's decision in this case cannot be overthrown unless it has acted arbitrarily and capriciously, and under the record we cannot find that it did so. These members are instructors, district route foremen dispatchers and traffic dispatchers, who exercise a certain amount of supervision over other employees."

Under the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, as amended by the Act of June 9, 1939, P. L. 293, the findings of the board as to the facts, supported by substantial and legally credible evidence, are conclusive on appeal: Lester v. Pennsylvania Labor Relations Board, 364 Pa. 541. See, also, Chapin v. Pennsylvania Labor Relations Board, 356 Pa. 577.

In Duquesne Light Company Case, 345 Pa. 458, the Supreme Court ruled that under the Pennsylvania Labor Relations Act the duty of determining the appropriate bargaining unit for employes is placed upon the Pennsylvania Labor Relations Board, and Mr. Justice Parker said (p. 462):

". . . The real question involved is not as contended for by the appellant, one of sufficiency of evidence, but rather whether the order made was so unreasonable, arbitrary or illegal that it cannot be sustained."

Tested by this rule, it cannot be said that error was committed by the board in refusing to accept and count the ballot of Perza. This is one of the issues contemplated by Learned Hand, J., in the decision of the United States Court of Appeals for the Second Cir-

cuit in National Labor Relations Board v. Dadourian Export Corporation, 138 F.(2d) 891, 892, that:

". . . upon those issues as to which it must be assumed to have a competence, born of its specialized acquaintance with labor relations . . . it (a labor board) is for practical purposes supreme. . . ."

Counsel for the board seriously raises the question as to the legal standing of the Ambridge Motor Coach Company to take this appeal. In his written brief he argues as follows:

"Section 9(*b*) of the Pennsylvania Labor Relations Act, 43 PS 211.9 provides that:

" '(*b*) *Any person aggrieved by a final order of the board granting or denying, in whole or in part, the relief sought, or by an order certifying a collective bargaining agent of employes may obtain a review . . .* ' "

"In view of the nature of the proceeding and the nature of the order, the company cannot be said to be 'a party aggrieved.'

"It must be remembered that '*A certification proceeding is of a nonadversary, fact-finding character in which the board plays the part of a disinterested investigator seeking merely to ascertain the desires of the employes as to their representation:*' Southern S. S. Co. v. National Labor Relations Board, 120 F.(2d) 505-507 (1941). As was said by Minton J., in the opinion of the United States Court of Appeals for the Seventh Circuit in National Labor Relations Board v. National Mineral Co., 134 F.(2d) 424, 426 (1943):

" '. . . *The employer is only a nominal party, the issue at the preliminary hearing in these cases arise between the employes themselves. . . .* The function of the board and *the employer, therefore in these hearings is merely to develop the facts relating to the right of the single claimant to speak for all the employes. The only persons directly affected by the board's finding*

*that there is a majority are the employes who have not
authorized the union to speak for them.*

" '*It is the agent of the employes that is being chosen,
and not the agent of the employer.*

" '*The employer's interest and his great concern
about whom the employes shall have as their represen-
tative for bargaining purposes are easily demonstrated
as very unsubstantial. . . .'*

"It is indeed difficult to understand why the com-
pany is interested in who is representative to his em-
ployes as bargaining agent or why the company is
concerned whether Perza is included in the bargain-
ing unit. Surely, the company is not a 'person ag-
grieved' by the order in this case.

"It is asserted that this appeal should be dismissed
upon the authority of In re Media Drug Stores, Inc.,
50 D. & C. 113 (1946). In this case the employer took
an appeal from a final order of the Pennsylvania Labor
Relations Board certifying the bargaining representa-
tive of certain employes in an appropriate unit. The
employer assigned as error that the employes voting
at the election were not an appropriate unit. Also, it
was asserted that union did not receive a legal ma-
jority. It was said by Judge Milner, of the Court of
Common Pleas No. 3 of Philadelphia County, at pages
117, 118:

" '*The Pennsylvania Labor Relations Act of June 1,
1937, P. L. 1168, sec. 9, as amended by the Act of May
18, 1945, P. L. 656, provides that "Any person ag-
grieved by a final order of the Board . . . may obtain
a review of such order in the court of common pleas.
. . ."* There is a serious question as to whether the peti-
tioner in this case is a "person aggrieved". This ques-
tion was not raised in the present case and we are not
called upon to pass upon it, except to call attention to
the fact that logically the "person aggrieved" in this

case is the unsuccessful union which has not challenged the certification in these proceedings. Furthermore, there is authority for the proposition that a certification by a labor relations board of a representative for purposes of collective bargaining is not a final order which is subject to review or appeal but is merely a certification of a fact. It has been held that, "Until the Board makes a final order commanding the Company to do something, its jurisdiction is exclusive and complete and its order may not be reversed or set aside if there is any substantial evidence to support it. Consequently until the Board makes a final order by which some person is aggrieved the proceedings of the Board may not be judicially reviewed or enjoined.". . .'

"The question is raised in the instant case and it is respectfully contended that the company is not a 'person aggrieved' by a final order of the board." (Italics supplied.)

Although it is not necessary for us to determine this question, in view of the position which we have taken in the foregoing opinion, we are inclined to the view that the company is not a party aggrieved by the decision of the board. We are of the opinion that the position of the company in the matter of who is to be the collective bargaining agent of the employes is similar to the position which the union occupied in the case of Pennsylvania Commercial Drivers Conference et al. v. Pennsylvania Milk Control Commission et al., 360 Pa. 477. In that case the Supreme Court of Pennsylvania ruled that the interest of the union in the subject matter of the litigation was not such as to constitute them persons aggrieved by the order. Mr. Justice Linn said as follows (pp. 483, 484) :

"There is nothing to show that any of appellants is adversely affected by the order in the sense that he can be a person aggrieved by it within the meaning of section 901. The restriction of the right of appeal to

persons aggrieved is as old as paragraph 9 of the Act of May 22, 1722, 1 Sm. L. 131, 12 PS 1091. See *Lawrence County's Appeal*, 67 Pa. 87 (1870) ; *Devereux Estate*, 353 Pa. 560, 46 A. 2d 168 (1946) ; *Musser's Estate*, 341 Pa. 1, 17 A. 2d 411 (1941) ; *State Board of Undertakers* v. *Joseph T. Sekula Funeral Homes, Inc.*, 339 Pa. 309, 14 A. 2d 308 (1940) ; *Easton Transit Company's Petition*, 270 Pa. 136, 112 A. 917 (1921) ; *Estate of Graff, Bennett & Co.*, 146 Pa. 415, 23 A. 397 (1891) ; *Appeal of The Fidelity Insurance Trust and Safe Deposit Co. et al.*, 115 Pa. 157, 10 A. 37 (1886) ; *Gallagher's Appeal*, 89 Pa. 29 (1879) ; *Singmaster's Appeal*, 86 Pa. 169 (1878) ; *Seitz Liquor License Case*, 157 Pa. Superior Ct. 553, 43 A. 2d 547 (1945). In *Lansdowne Borough Board of Adjustment's Appeal*, 313 Pa. 523, 525, 170 A. 867, 868 (1934) the controlling principle was stated to be: 'A cardinal principle, which applies alike to every person desiring to appeal, whether a party to the record or not, is that he must have a direct interest in the subject-matter of the particular litigation, otherwise he can have no standing to appeal. And not only must a party desiring to appeal have a direct interest in the particular question litigated, but his interest must be immediate and pecuniary, and not a remote consequence of the judgment. The interest must also be substantial.'

"The appellants' interest is stated by Mr. McDevitt, a witness called on their behalf. 'Q. Will you state what your interest is in these proceedings? A. Our interest in the proceedings is first to make clear as far as the federation is concerned we have no objection to a continuation of the every-other-day delivery as we understand it, but rather to register an objection to any governmental agency attempting to regulate anything that is normally handled through the processes of collective bargaining. Q. And you feel that matters relating to the days upon which a man can work and

the length of their work week and other factors relating to hours and working conditions are purely within the field of free collective bargaining? A. Very definitely.' But that interest in this proceeding is obviously not a direct interest, but an interest that is too remote to constitute a person aggrieved; it is not an interest that at the time the order was made was the subject of pecuniary consideration to appellants in any collective bargaining then in process; it may never become a subject of such consideration and therefore does not constitute a substantial interest in this proceeding affecting appellants. As the learned court below pointed out, 'Here, the general order appealed from is capable of directly affecting only "Persons engaged in business as milk dealers, handlers or distributors", "consumers" and producers. Therefore, any effect which it may have upon persons employed by milk dealers, handlers and distributors individually, or upon their representative union, is a remote consequence of the order and is therefore indirect and incidental. . . .' "

It seems to us that the union, in the Milk Control Commission case, had at least as much at stake as does the company in the case we are now considering. It appears to us that the company is not a party aggrieved by the action of the board, inasmuch as the effect of the order on the company is remote and therefore indirect and incidental.

We prefer, however, to base our final order on the fact that the findings of the board as to the facts are supported by substantial and legally credible evidence, and are therefore conclusive on appeal.

For the reasons stated we make the following

*Order*

Now, July 6, 1950, the appeal of the Ambridge Motor Coach Company is dismissed.