## Delaware County National Bank, Appellant, v. Campbell.

312

Argued June 1, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Bernard G. Segal,* with him *Gilbert W. Oswald, Chadwick, Curran, Petrikin & Smithers* and *Schnader, Harrison, Segal & Lewis,* for appellant.

*Robert L. Rubendall,* Deputy Attorney General, with him *Frank F. Truscott,* Attorney General, for Commonwealth, appellee.

*Ernest Scott,* with him *Augustus S. Ballard, Paul Lane Ives, C. William Kraft, Jr., Thomas B. K. Ringe, Morgan, Lewis & Bockius* and *Pepper, Bodine, Stokes & Hamilton,* for Fidelity-Phila. Trust Co., appellee.

OPINION BY MR. JUSTICE BELL, June 28, 1954:

The Delaware County National Bank has appealed directly to this Court by certiorari from an Order or decision of the Pennsylvania Banking Board dated February 4, 1954, which approved the proposed merger of Fidelity-Philadelphia Trust Company (which has its main office and six branch offices in Philadelphia) with the First National Bank of Chester (which has a main and two branch offices in) Delaware County. Under the merger the Fidelity-Philadelphia Trust Company will establish a branch office or bank in the present banking quarters of the First National Bank of Chester—in other words, it will in effect continue the local bank as a branch bank. No serious objection was made by appellant to the merger and establish-

ment of a branch bank at Clifton Heights, or of a branch bank at Marcus Hook, and since our decision will likewise govern those mergers and branches we shall confine our discussion to the merger in Chester.

The Fidelity-Philadelphia Trust Company and the Attorney General of Pennsylvania moved to quash the appeal on the two-fold ground that certiorari will not lie and that in any event a national bank has no standing to contest this merger.

Three important questions are raised by this appeal: (1) will certiorari lie from the Supreme Court of Pennsylvania to review an Order of the Pennsylvania Banking Board approving such a merger and if so, is it a broad or a narrow certiorari; (2) has a national bank in the community in question any standing, position or right to contest the merger of a state bank and a national bank with the resultant branch office in that community in competition with the contesting bank; and (3) what is the interpretation of the pertinent provisions of the Banking Code * and of the Department of Banking Code? **

The Department of Banking was created not to manage or operate a bank but to supervise a bank, and to be a watchdog in the interests of depositors, creditors, shareholders and of the community in general. The Department has the power and duty, inter alia, to approve or disapprove a proposed merger or consolidation of banks: §1406 of the Banking Code. If the Department of Banking disapproves the articles of merger or of consolidation its decision "shall be conclusive and not subject to review:" §1406 C. If, however, it approves the articles of merger or of consolidation, there is no express provision that its de-

---

* Act of May 15, 1933, P. L. 624, as amended, 7 PS 819, et seq.
** Act of May 15, 1933, P. L. 565, as amended, 71 PS 733 et seq.

cision shall be conclusive or not subject to review: cf. §1406 B.

However, if a merger or consolidation is proposed, *the effect of which is to establish a branch,* the Department of Banking has the power and the duty to approve or disapprove the articles of merger or consolidation within 60 days. But in the event of approval, that is not the end of the matter.

"If the Department of Banking shall approve such articles it shall forward them to the Banking Board for review. \*\*\* [and] . . . The decision of the Banking Board shall be binding upon the Department of Banking.": §204 F(2) (Banking Code).

The Banking Board is composed of 11 members—the Secretary of Banking of the Commonwealth of Pennsylvania, as Chairman, four members appointed by the Governor of Pennsylvania, and six members selected by the Governor from among the nominees submitted to him by groups of the Pennsylvania Bankers Association representing different geographical sections of the State: §501 C of the *Department* of Banking Code. The Board is composed of experienced and able bankers who should know, if anyone knows, the banking needs of the various communities in Pennsylvania and whether adequate banking facilities do or do not exist.

The powers of the Banking Board, so far as they are pertinent hereto, are as follows (§501 C) : "There is hereby created a board to be known as the 'Banking Board,' which shall hear any attorney, officer, em-

---

\*\*\* Although the differentiation in finality and in procedure between a merger with a resultant branch bank which is approved by the Department and such a merger which is disapproved, may seem strange, as a former Secretary of Banking I cannot refrain from saying that in my judgment the distinction which the law makes is both practical and wise.

ploye, director, or trustee of any corporation or person, subject to the supervision of the Department of Banking, who shall have been ordered, by the Department of Banking to appear before such board, to show cause why his office or position should not be declared vacant. The Board shall also exercise such additional powers as shall be given to it, and shall act upon such matters as shall be referred to it by any laws of this Commonwealth."

In disposing of the motions to quash we must consider the powers and authority of the Banking Board, and what power of review, if any, the Courts possess on an appeal by a national bank from an order of a State administrative agency. It will aid us in determining these questions if we first review the applicable principles of law.

This case arose on a certiorari and possessing as we do, and other courts of the Commonwealth do not, the powers of King's Bench, it was properly brought direct to this Court: *Commonwealth v. Onda*, 376 Pa. 405, 103 A. 2d 90; cf. also *Nobles v. Piollet*, 16 Pa. Superior Ct. 386; *Morrison, Sec. of Com. v. Philadelphia College of Law, Inc.*, 56 Dauphin 265.

Review on certiorari has been recently considered and clarified by Mr. Chief Justice STERN in *Kaufman Construction Co. v. Holcomb*, 357 Pa. 514, 55 A. 2d 534. In that case the statute provided that the award of the Board of Arbitration shall be final and no appeal from such award to any court shall be allowed. The Chief Justice said (pp. 517-519): "Where a statute expressly denies the right of appeal to a court from the action of some agency of government, or to an appellate court from the decision of a court of original jurisdiction, to what extent is a disappointed claimant thereby prevented from obtaining a complete judicial review of his claim? After some vacillation

by the courts in regard to the proper answer to that question—(as to which see Rimer's Contested Election. Geary's Appeal, 316 Pa. 342, 175 A. 544, and McGettigan's Liquor License Case, 131 Pa. Superior Ct. 280, 200 A. 213)—the law is now reasonably clear, a distinction being made between the effect of a statute which merely fails to provide for a right of appeal and the effect of one which expressly denies that right. This differentiation apparently had its origin in Twenty-First Senatorial District Nomination, 281 Pa. 273, 279, 126 A. 566, 568, in which it was said: 'Where, in a statutory proceeding, the legislature fails to provide for an appeal, and because of that omission the action of the tribunal involved is, generally speaking, considered final ... a certiorari to inspect the record, in the broadest sense allowed by our cases, may, nevertheless, issue; but where the legislature ... particularly states that no appeal shall be permitted, then review, beyond determining questions of jurisdiction, cannot be had; and, under circumstances such as those at bar, a certiorari for the latter purpose cannot be broadened into something more extensive, either by our prior rulings on the general subject in hand, or by operation of the Act of April 18, 1919, P. L. 72.' The distinction thus made has been reiterated and reinforced in a multitude of subsequent cases holding that where a statute expressly provides that there shall be no appeal the scope of appellate review is limited to the question of jurisdiction and the regularity of the proceedings; the merits of the controversy cannot be considered even though the interpretation given to the facts or the law by the governmental agency or the court below may have been erroneous. It is only where the statute is silent on the question of appeal that a review by certiorari may be had 'in the broadest sense' and the court may consider the

record, including the testimony, to determine whether the findings are supported by competent evidence and to correct any conclusions of law erroneously made."

Assuming for the moment that an appeal will lie from this Order of the Pennsylvania Banking Board, it is clear that whether certiorari is limited to the question of jurisdiction and the regularity of the proceedings or whether it may be had in its broadest sense, i.e., a narrow certiorari or a broad certiorari, depends on whether a right of appeal to the Courts has been expressly denied. On this question the parties diametrically differ.

Section 501 B of the Department of Banking Code, upon which the appellees rely, provides that if an officer or employe or director of a banking institution shall have violated the law, the Banking Board may, after hearing, direct his removal and "the decision . . . of the Banking Board . . . shall be conclusive and not subject to any review." However, the next paragraph, which is §501 C, upon which appellant relies, contains detailed provisions for the appointment, and general provisions for the functioning of the Banking Board, but contains no provisions with respect to finality or review of other actions of the Banking Board. We therefore agree with appellant that the prohibition of review applies only to the question of removal of an officer, employe or director under §501B.

Section 204 D of the Banking Code, which is the pertinent section with respect to the merits of this appeal, and will therefore be discussed in detail hereinafter, contains no express prohibitions against review.

Appellees also rely on §1406 C of the Banking Code, which provides: "If the Department of Banking *disapproves* * the articles of merger [without a branch

* Italics throughout, ours.

bank] or the articles of consolidation, it shall return them to the Department of State, stating in detail its reasons for doing so. . . . The decision of the Department of Banking shall be conclusive and not subject to review." From this appellees argue that although the Code did not say so, if the Department of Banking *approves* the articles of merger its decision must be conclusive and not subject to review. This is a non sequitur. Moreover, this section has no application to the case of a merger, the effect of which is to establish a branch office or branch bank. Where no branch bank is involved the law makes no provision for reference of the proposed merger to the Banking Board. Where a branch is involved, the matter is referred to the Banking Board, if the Department of Banking first approves the articles of proposed merger.

This appears in §204 F of the Banking Code, which is also relied on by appellees, and which provides: "Articles of incorporation, of amendment, of merger, or of consolidation, as the case may be, *the effect of which is to establish a branch,* . . . in a county contiguous to the county of principal place of business, . . . the Department of Banking shall . . . either approve or disapprove such articles . . .

"If the Department of Banking shall approve such articles, it shall forward them to the Banking Board for review. The Banking Board shall, after such investigation or hearing as it may deem advisable, either approve or disapprove the action of the Department of Banking, and shall return the articles to the Department of Banking with notice of its decision, and, in the case of disapproval, with a statement in detail of its reasons for doing so. The decision of the Banking Board shall be *binding upon the Department of Banking.*"

It will be noted that the decision of the Banking Board is asserted to be binding not upon the parties but upon the Department of Banking, and there is no prohibition against review.

We therefore decide that there is no provision in either Code which prohibits an appeal or judicial review from the Order entered by the Banking Board in this case.

But the contention of the Attorney General and of the Fidelity-Philadelphia Trust Company goes deeper. They contend that even though no right of appeal or certiorari is prohibited, certiorari will not lie from the decisions of a nonjudicial administrative board unless specifically authorized by the legislature. Each party litigant cites in support of its position *Newport Township School District v. State Tax Equalization Board,* 366 Pa. 603, 607, 79 A. 2d 641. In that case the Court wisely held that it does not have any power to review directly by certiorari the findings or actions of the State Tax Equalization Board since it "functions not as a judicial body but as a legislative or administrative body designated by the legislature to supply one fact of a legislative formula by which school subsidies are allocated.* . . . No property right is involved, . . ." That case does not help the appellees. However, in its opinion the Court said (p. 609): ". . . In Short's Estate, 315 Pa. 561, 173 A. 319 . . . we decided we had no such right [the power to review by certiorari the findings of a *nonjudicial* administrative board] . . . '. . . the authorities agree that certiorari does not lie to review or annul any judgment or proceeding which is not judicial in its nature, but with respect to various proceedings there is room for great

---

* The Board determines the market value of taxable real property in each school district, not for purposes of taxation but for legislative allocation of funds among school districts.

difference of opinion as to whether they are judicial or not. If they are either legislative or executive, they are beyond the reach of this writ.' . . ." It impliedly appears from this case that certiorari will lie to this Court from an order or judgment of an Administrative Board which is judicial in nature and substantially affects property rights.

The Court further said (p. 610) : " '. . . It was held at an early time that the writ [of certiorari] was available *against bodies other than courts* and would issue *to boards or commissions* created by statute, such as the Commissioners of Sewers, in order to keep them within their proper jurisdiction.' . . . It will be observed also that this old English case is in keeping with the rule that at common law the writ was available to review the proceedings of inferior judicial tribunals, judicial officers *or bodies exercising judicial acts. . . .*"*

Appellees rely mainly upon *Short's Estate,* 315 Pa., supra. In an exceptionally short Per Curiam opinion, this Court there held that an appeal should be quashed where the Board of Finance and Revenue refused a petition for refund of inheritance taxes paid by an executor, for the reason that an appeal from the action of this administrative body does not lie unless expressly authorized by statute. The Fiscal Code of April 9, 1929, gave the Board authority to hear and determine petitions for refund of transfer inheritance

---

* Administrative agencies have mushroomed in the last 20 years in number, growth and power, to such an extent that today they exercise considerable control not only over our property but also over our daily lives. In the light of these facts it is certainly desirable to have some judicial review over some of their judicial actions which so vitally affect the property and the basic rights of the people of Pennsylvania. Denial of any judicial review in such cases would at times result in a miscarriage of justice and in some cases a deprivation of due process.

tax and provided, inter alia, that "the action of the Board on such petitions shall be final." This Court said that in refusing the petition "we are unable to say the Board abused its discretion." If narrow certiorari did not lie in such a case there would seem to be no point in the Court's statement that it was unable to say the Board abused its discretion. We believe the decision was based upon the fact that the action of the Board was a matter of legislative grace and not a judicial act and that it did not affect property rights. See *Hotel Casey Co. v. Ross*, 343 Pa. 573, 23 A. 2d 737; *Newport Township School District v. State Tax Equalization Board*, 366 Pa. 603, supra. Cf. also: *Grime v. Department of Public Instruction*, 324 Pa. 371, 188 A. 337.

Appellees also cite *Glen Alden Coal Co. v. State Tax Equalization Board*, 367 Pa. 63, 79 A. 2d 645, as holding that certiorari will not lie from an order of an administrative board. The case is not authority for such a proposition. In that case a bill in equity was brought to restrain the Board from certifying the valuation of all taxable real property in a certain township because the determined value was grossly excessive. The Court below correctly held that a bill in equity would not lie; that the determinations of the Board are used solely for the purpose of ascertaining the amount of the state subsidy for each school district and had no bearing whatever on local taxes; that the Board was not obliged to hear testimony or divulge the basis of its findings; and finally, that "A bill in equity may not be used as a substitute for an appeal in order to circumvent the legislative prohibition [against review]." This was clearly not appealable for the additional reasons set forth in *Newport Township School District v. State Tax Equalization Board*, 366 Pa., supra.

However, the Attorney General and the Fidelity-Philadelphia Trust Company further argue that even if certiorari lies, a national bank has no standing or right to be heard on such appeal. In support of this contention they cite *Pennsylvania Commercial Drivers Conference v. Pennsylvania Milk Control Commission*, 360 Pa. 477, 62 A. 2d 9, where this Court said that to be a proper party the party " ' must have a direct interest in the subject-matter of the particular litigation, otherwise he can have no standing to appeal. And not only must the party desiring to appeal have a direct interest in the particular question litigated, but his interest must be immediate and pecuniary, and not a remote consequence of the judgment. The interest must also be substantial.' "

If this were strictly construed and thus applied to this case it would mean that only the two banks involved in the merger and their respective stockholders or creditors could have any standing to object or appeal. A state bank next door would, under this interpretation, have no standing to object. Even the appellees concede that this is not the rule in this class of case.

In order to determine whether a national bank, not a party to the merger, has a direct and substantial interest in the question here involved, we must examine further the facts.

The Banking Board found as a fact: "11. That the banking facilities in the City of Chester are not over-adequate and that the City of Chester would be without adequate banking facilities if it did not have the banking facilities afforded by the First National Bank of Chester, Pennsylvania."

On the basis of the Board's findings of fact the Board made the following conclusion of law: "3. The State Banking Board concludes that the City of Ches-

ter is now without adequate banking facilities other than the First National Bank of Chester, Pennsylvania."

There was ample evidence to support all of the findings of fact of the Pennsylvania Banking Board,—what appellant seriously challenges is the Board's aforesaid conclusion of law. We shall discuss this question more at length when we come to the merits of the case, but on the question of quashing we must review all of the surrounding and attendant circumstances in order to determine whether the Delaware County National Bank has a standing in this appeal.

While neither the Banking Code nor the Department of Banking Code require a national bank to be notified of a proposed merger, it has been the practice of the Department of Banking and of the Banking Board to notify a nearby national bank and to permit it, as was done in the present case, to present evidence and objections to the proposed merger. The community of interest in our dual banking system must not be overlooked or destroyed and the experience of 1933, which resulted in part from overbanking, should not be forgotten. If a drug store or a large department store should fail it would not adversely affect, but would probably benefit a drug store or large department store on the opposite corner of the street. This is not true in the banking world. If one or more banks fail in a community, "runs" may and often do occur on other banks and the entire banking community will likely be shaken or destroyed to the injury of depositors, creditors, stockholders and the banking world alike. If a bank fails the depositors and the public at large make no differentiation between a closed national bank or a closed state bank and the results of closing will be just as detrimental and disastrous to the

community irrespective of whether the closed bank was a national or a state bank.

Part of the powers and duties of the Department of Banking, and in cases of mergers with resultant branch banking, part of the powers and duties of the Banking Board, is to determine, as the Department and Board did in the present case, whether the community served and from which a bank draws its depositors and clients has adequate banking facilities and is not overbanked. Appellees admit this throughout their brief. Appellees say: "As interpreted by the Banking Board in accordance with its plain terms, the clear intention of the statute in regard to establishment of branches, both by new branch and by merger, is the same: to guard against 'overbanking' on the one hand, and 'underbanking' on the other; . . .". The legislature, as appellees further admit, did not exclude or intend to exclude competition between banks; it intended, inter alia, to exclude such competition as would likely weaken or destroy some banks in an overbanked community and thus weaken or injure the entire banking system, to the detriment of depositors, creditors, stockholders and the public alike.

The language of §204 D of the Banking Code upon which appellees rely in their argument on the merits, permits a merger when the community is "without adequate banking facilities". An examination of this section and of other pertinent sections of the Code shows that in this respect no distinction was intended to be drawn between state banking facilities and facilities provided by national banks. If, for example, a community has nothing but national banks and those banks provide adequate banking facilities for the community and its needs and the people it serves, a new state bank or a branch state bank which will over-

bank the community should not be permitted,* for the basic reason that if the community thereby becomes overbanked, the failure of the new branch or of any bank, state or national, may and ofttimes does cause the disastrous results and losses hereinabove set forth. On the question, therefore, of who has a standing to object, the words "without adequate banking facilities" include facilities provided by both state and national banks and either, if directly and substantially affected, has a standing or right to object. Cf. also to the same affect *Azarewicz Liquor License Case*, 163 Pa. Superior Ct. 459, 461, 62 A. 2d 78; *North Arlington Nat. Bank v. Kearny Federal Savings & Loan Asso.*, 187 F. 2d 564 (3rd Circuit 1951); *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U. S. 123, 151.

We therefore hold that the Delaware County National Bank has a standing in this case; that it is a proper party in interest and possesses a right to attack this proposed merger; that an appeal lies by certiorari, and that certiorari lies in its broadest sense. The motions to quash are therefore dismissed.

We now come to a consideration of the appeal on its merits and that depends upon the interpretation of §204 D of the Banking Code. That section provides: A state bank "may establish a branch . . . in any place within any county contiguous to the county in which its principal place of business is located, if the city, borough, or other community in which such branch is to be established is *without adequate banking facilities, or*, in the case of a merger or consolidation, is without adequate banking facilities *other than* an incorporated institution or national banking association

---

* Cf. §306-A (2)

which is a party to the plan of merger or consolidation. . . ."

The argument boils down to an interpretation of the words "other than"; appellant contends they mean "including" the banks involved in the merger, while appellees contend they mean "excluding" the banks involved in the merger.

The Banking Board found, as we have seen, that the community was without adequate banking facilities *excluding* the merging institutions.

While the Banking Code and the Department of Banking Code have been exceptionally ably drawn, time and changing conditions always disclose that a lengthy, minutely detailed Act is never letter-perfect.

Appellant contends that the purpose and intent of the Act and particularly of this Section of the Act was to protect small rural banks from branch banking by large city banks and consequently §204 D must have meant "without adequate banking facilities including the branch to be established as the result of the merger." We cannot so read the Act. "Other than" in its ordinary meaning means what it says, i.e., "excluding" and does not mean "including", as appellant argues. If this interpretation does not protect small rural banks from branch banking by big city banks— a bitterly controversial subject—the problem can best be solved by the legislature, but in no event can or should be solved by the Courts.

We therefore interpret §204 D as the Banking Board did, namely, a merger may be approved if the city, borough, or other community in which such branch is to be established is without adequate banking facilities excluding the institutions which are a party to the plan of merger.

We will not overrule or reverse the Banking Board if there is adequate evidence to support its

findings of fact and the proceeding is free from error of law and there has been no clear abuse of discretion. Cf. *Rolling Green Golf Club Case,* 374 Pa. 450, 458, 97 A. 2d 523. In this case the Board's findings of fact were supported by adequate evidence, and there was no clear abuse of discretion,\* and no error of law.

We have considered all of the contentions made by each of the parties in this case, but deem further discussion unnecessary.

The Order of the Pennsylvania Banking Board dated February 4, 1954 is affirmed; each party to pay its respective costs.

---

OPINION BY MR. JUSTICE JONES dissenting and concurring in part:

The writ of certiorari sued out by the appellant should be quashed. The order of the Banking Board of Pennsylvania approving the articles of merger is not judicially reviewable. It is a legislatively authorized administrative and non-judicial act from which no appeal has been provided by the legislature. The action of the majority in according a right of appeal from an order of the Banking Board in the absence of legislative authorization constitutes a flagrant departure from established rules of legal procedure. It veritably works an unconstitutional intrusion by the judiciary upon the province of the legislative branch of our State Government.

The non-appealability of an order of similar character has been directly ruled by this court. Cf. *Short's Estate,* 315 Pa. 561, 173 A. 319, where we quashed an appeal, in the nature of a certiorari, from the refusal

---

\* Where a Board is composed of able and experienced experts who are dealing with technical questions, a Court should be loath to find a clear abuse of discretion upon a subject or subjects as to which they are far better qualified than any Court.

of the Board of Finance and Revenue to allow a refund of inheritance taxes which the appellant claimed had been illegally collected. The opinion for the majority in the instant case seeks to pass off the pertinency of the decision in *Short's Estate* as being based upon "an exceptionally short Per Curiam opinion". The opinion was sufficiently long, however, to go directly to the procedural question involved and to decide flatly that "The motion to quash must be sustained for the reason that an appeal from the action of the Board of Finance and Revenue, an administrative body, does not lie, unless expressly authorized by statute." The valiant effort of learned counsel for appellant to distinguish *Short's Estate* only serves, in its manifest faithfulness to the law and logic, to confirm that the order of the Banking Board is likewise not appealable.

In *Newport Township School District v. State Tax Equalization Board,* 366 Pa. 603, 608, 609, 79 A. 2d 641, where an appeal was sought to be taken from an order of the State Tax Equalization Board, the late Mr. Justice Ladner, speaking for a unanimous court, after recognizing our plenary power to review and supervise proceedings of *inferior courts* or *judicial officers* or *judicial tribunals* of this Commonwealth by the common law writ of certiorari, observed that "Whether we have the power to review directly by certiorari, the findings or actions of a non-judicial administrative board in the absence of any such authorization by the legislature is an entirely different question." And, in answering the "different" question, the learned Justice said,—"In *Short's Estate,* [cit. supra], we decided we had no such right. . . . '[T]he authorities agree that *certiorari* does not lie to review or annul any judgment or proceeding which is not judicial in its nature, but with respect to various proceedings there

is room for great difference of opinion as to whether they are judicial or not. If they are either legislative or executive, they are beyond the reach of this writ.' " An order of an administrative body which does not adjudicate property rights is non-judicial, and that is the status of the order of the Banking Board with which this case is concerned. The merger did not pass upon anyone's rights. It was the voluntary corporate action of the constituent banking institutions and required only the approval of the Banking Board and the Department of Banking. It did not require the approval of a court. It is interesting to note that our decision in the *Newport Township* case, supra, which denied judicial review of an order of the State Tax Equalization Board, was handed down on March 22, 1951, and that, six months later, by amendment of the Administrative Agency Law of 1945, P. L. 1388, an order of the State Tax Equalization Board was made judicially reviewable by way of appeal to the Court of Common Pleas of Dauphin County: see Section 7 of the Act of September 28, 1951, P. L. 1561, 71 PS §1710.51 (a) (44). That, the legislature could competently do; but for this court to accord such a right amounts to a wilful assumption of a jurisdiction which is not ours.

Neither the Department of Banking Code nor the Banking Code confers any right of appeal from an order of the Banking Board or the Department of Banking. On the contrary, Section 501 of the Department of Banking Code of 1933, P. L. 565, as amended, 71 PS § 733-501, provides that "The decision . . . of the Banking Board . . . shall be conclusive and not subject to *any* review". (Emphasis supplied). Consonantly, Section 1406 of the Banking Code of 1933, P. L. 624, as amended, 7 PS § 819-1406, expressly provides *with respect to approval of articles of merger* by the

Department of Banking that "The decision of the Department of Banking shall be conclusive and not subject to review." In addition to that, Section 7 of the Act of September 28, 1951, P. L. 1561, 71 PS § 1710.51, in amending Section 51 of the Administrative Agency Law of 1945, P. L. 1388, specifically withheld, in respect of all actions of the Banking Board of Pennsylvania, the right of judicial review and appeal which the Administrative Agency Law otherwise confers with respect to the actions of *other* specified administrative agencies. It is plain beyond peradventure not only that the legislature has *not* authorized judicial review of an order of the Banking Board or of the Department of Banking but has, in fact, expressly excluded any such right; and, that was well within the legislature's constitutional power.

The instant action of the Banking Board is an authorized administrative exercise of the legislature's power "by general law to provide for the incorporation of banks and trust companies, and to prescribe the powers thereof": Article XVI, Section 11, of the Pennsylvania Constitution. With such matters the courts have nothing whatsoever to do in the absence of legislative provision for judicial review. In short, the people have, by their fundamental law, committed the creation, control and supervision of banks and trust companies to the legislature. Such matters being peculiarly administrative, there is no right of appeal to the courts except as the legislature may have authorized. For the courts to intrude in administrative legislative matters, where the legislature has seen fit not to authorize judicial review, would amount to an unconstitutional usurpation by the judiciary of legislative power. Inasmuch as the courts, by virtue of their position in our governmental system, have the duty ultimately to determine and denounce invasions by

one coordinate branch of the province of another, it behooves them, especially, to regard scrupulously the constitutional delimitations upon their own powers. The way to maintain one's jurisdiction in full vigor and integrity is to respect that of another.

The discussion in the majority opinion as to the relative scope of review upon a broad or a narrow certiorari is wholly irrelevant to the question of appealability of an order of the Banking Board. The inquiry here is not how one gets into court for the review of such an order, but whether he gets there at all. Insofar as the cases cited in the majority opinion involved appellate review on certiorari, they were concerned with judgments, orders or decrees of judicial or quasi-judicial bodies where, of course, certiorari by this court lies. Even in respect of such judicial bodies, when an appeal is statutorily denied, a review by this court on certiorari is narrowly limited to questions of jurisdiction and regularity of the proceedings. How, then, can the majority, aside from the error of allowing an appeal from the administrative order of the Banking Board, say that "certiorari lies in its broadest sense" in the present instance? It is simply not possible to overestimate the harm that will ensue from this court's allowance of an appeal in this case.

If, however, the appeal is to be entertained and the appellant accorded standing which it manifestly does not have,[1] I agree that the order should be affirmed.

---

[1] In *Pennsylvania Commercial Drivers Conference v. Pennsylvania Milk Control Commission*, 360 Pa. 477, 484, 62 A. 2d 9, we said that "not only must a party desiring to appeal have a direct interest in the particular question litigated, but his interest must be immediate and pecuniary, and not a remote consequence of the judgment. The interest must also be substantial." His mere appearance on the record as a protestant in the proceeding does not entitle him to appeal: see *Arsenal Board of Trade v. Pennsylvania*

The Board followed the directions of the statute (Sec. 204D of the Banking Code), the intent whereof is plainly expressed in words not susceptible of misunderstanding.

Mr. Justice ALLEN M. STEARNE and Mr. Justice CHIDSEY join in this opinion.

---

*Public Utility Commission*, 166 Pa. Superior Ct. 548, 551-552, 72 A. 2d 612. In the present instance, the appellant has neither a substantial nor a direct interest in the Banking Board's order. All that concerns it is a speculative fear of loss based upon an assumption of harmful competition from the merged bank. Such conjectural interest, even if well-founded, would not give the appellant standing to appeal in any circumstances.