Ritter Finance Company, Inc., Appellant, *v.* Myers.

Argued September 29, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Harold E. Kohn,* with him *Ross J. Reese, Jr.,* and *Dilworth, Paxson, Kalish, Kohn & Dilks,* for appellant.

*Peter Platten,* and *Ballard, Spahr, Andrews & Ingersoll,* for appellant.

*Frederic G. Antoun,* Deputy Attorney General, with him *Anne X. Alpern,* Attorney General, for Secretary of Banking, appellee.

OPINION BY MR. JUSTICE BELL, November 15, 1960:

The present appeals in the nature of a broad certiorari were taken by neighboring Small Loan Companies from the Order of the Secretary of Banking which granted a Small Loans License to Household Finance Corporation for a branch office in Levittown.

Household Finance Corporation, the applicant for a Small Loans License, seeks to establish a branch office in an area where within a radius of 7.2 miles there are already 13 licensed small loan company offices. Ritter Finance Company, Inc. (appellant) has two offices in the area, one 900 feet and the other 5.4 miles from applicant's proposed location. King Finance Corporation (appellant) has an office which is located 6.2 miles from the proposed location.

The Department of Banking, in accordance with its practice, notified each of the small loan companies which are located within the "community", of Household's application and offered them an opportunity to file objections in writing within 20 days. Testimony was taken, exhibits offered and a "determination" or Order was made by the Secretary of Banking. Both Ritter and King, although they have never been made parties to this proceeding, filed objections and appeared before the Secretary at the hearing and unsuccessfully protested the grant of a license.

Appellants contend in this appeal (1) that the Secretary of Banking committed fundamental error by relying upon material which was not contained in the record and as to which they had no opportunity for examination or cross-examination; (2) that the evidence was insufficient to support the findings of the Secretary or to justify the grant of a license; and (3) the Secretary based his decision and Order on errors of law.

At the threshold of our consideration of this case we are met with the motion of the Secretary of Banking to quash the appeals. The first and basic issue therefore is whether an appeal in the nature of certiorari will lie, and if so whether the present appellants have any standing to appeal.

The Small Loans Act* provides pertinently: "Section 1 . . . (a) Any person or persons, firm, corporation, or association, applying for the same . . . and paying the sum of one hundred ($100) dollars, may in the discretion of the Secretary of Banking . . . obtain a license for carrying on the said business. *The said license* shall be issued by the Secretary of Banking, and *shall expire the first day of June next following the date of its issuance . . . .** Every such license shall be renewed annually on the first day of June in each year. . . .* The said Secretary of Banking shall have the power to reject any application for license, if he is satisfied that the financial responsibility, experience, character and general fitness of the applicant or applicants are not such as to command the confidence of the community and to warrant the conclusion that the business will be honestly transacted in accordance with the intent and purpose of this act, *or if he is not satisfied that allowing such applicant to engage in business will promote the convenience and advantage of the community in which the business of the applicant is to be conducted,* or if it shall appear to the Secretary of Banking that the business of the applicant is, or is to be, substantially that generally conducted by pawnbrokers. . . ."

The Act contains no provision for a hearing or an appeal if and when the Secretary issues a license, but

---

* Act of June 17, 1915, P. L. 1012, as amended by the Act of May 28, 1937, P. L. 989, 7 PS §751 et seq.

** Italics throughout, ours.

does provide (a) for a hearing when the Secretary issues a notice of intention to revoke a license and (b) "the licensee may within the period of thirty days provided in the notice, appeal from such action to the court of common pleas of Dauphin County." §1(a), as amended by §1 of the Act of May 28, 1937, P. L. 989, 7 PS §752.

It is to be noted from the preceding provisions that (1) licenses are issued for a period of only one year and must be renewed each year;* (2) nowhere does the Act provide for notice or hearing or appeal with respect to the *grant* of a license; and (3) where the Secretary signifies his intention to revoke a license, the Act provides for notice, hearing and an appeal to the Court of Common Pleas of Dauphin County. In this last situation it would appear that no right of appeal by certiorari to this Court from the decision or Order of the Secretary of Banking exists.

Where, as here, a statute is silent as to the right to appeal, or does not provide that the decision of the Secretary or of the Department of Banking shall be final, conclusive or otherwise non-appealable, an appeal—if certiorari lies and if the appellant has a status to appeal thereunder—is allowed in the nature of a broad certiorari. *Dauphin Deposit Trust Company v. Myers,* 401 Pa. 230, 164 A. 2d 86 (1960); *Cumberland Valley Savings & Loan Assn. v. Myers,* 396 Pa. 331, 340, 153 A. 2d 466 (1959); *Philadelphia Saving Fund Society v. Banking Board,* 383 Pa. 253, 256, 118 A. 2d 561 (1955); *Delaware County National Bank v. Campbell,* 378 Pa. 311, 316-317, 106 A. 2d 416 (1954).

In support of their right to bring these appeals, appellants rely upon the four cases cited above. All of them are distinguishable. In *Delaware County Na-*

---

* Each renewal requires a new ex parte application.

*tional Bank v. Campbell,* 378 Pa., supra, this Court held that a national bank which was a protestant, had a standing to attack the proposed merger of the Fidelity-Philadelphia Trust Company and the First National Bank of Chester. That case arose under the Banking Code of May 15, 1933, P. L. 624, as amended,* and the Department of Banking Code of May 15, 1933, P. L. 565, as amended,** and *a protesting bank* was allowed a right of appeal in the nature of a broad certiorari.

In *Philadelphia Saving Fund Society v. Banking Board of Pennsylvania,* 383 Pa., supra, the Society's application for a branch bank was denied by the Banking Board and this Court allowed an appeal in the nature of a broad certiorari. Mr. Justice (now Chief Justice) JONES, speaking (on this point) for a unanimous Court said (page 256) : "The appellees have moved to quash the appeal. The motion must be denied. This Court has jurisdiction in the premises; and the certiorari is broad. So much was decided in Delaware County National Bank v. Campbell, 378 Pa. 311, 106 A. 2d 416."

In *Cumberland Valley Savings & Loan Assn. v. Myers,* 396 Pa., supra, this Court dismissed a motion to quash and allowed an appeal by a *protesting* building and loan association from an Order of the Building & Loan Board which approved an application of the State Capital Savings and Loan Association for a branch office.

In *Dauphin Deposit Trust Company v. Myers,* 401 Pa., supra, we allowed an appeal in the nature of a broad certiorari from an Order of the Secretary of Banking and the Department of Banking which disapproved an application for a branch office.

---

* 7 PS §819-1 et seq.

** 71 PS §733-1 et seq.

In the aforesaid cases the right of appeal in the nature of a certiorari, as well as the Banking Code, the Building & Loan Code and the Department of Banking Code were analyzed in great detail. In *Delaware County National Bank v. Campbell,* the Court said (pages 320, 321, 323, 325):

"But the contention of the Attorney General and of the Fidelity-Philadelphia Trust Company goes deeper. They contend that even though no right of appeal or certiorari is prohibited, certiorari will not lie from the decisions of a nonjudicial administrative board unless specifically authorized by the legislature. . . . It impliedly appears from this case that certiorari will lie to this Court from an order or judgment of an Administrative Board which is judicial in nature and substantially affects property rights.

. . .

"However, the Attorney General and the Fidelity-Philadelphia Trust Company further argue that even if certiorari lies, a [protesting] national bank has no standing or right to be heard on such appeal. In support of this contention they cite Pennsylvania Commercial Drivers Conference v. Pennsylvania Milk Control Commission, 360 Pa. 477, 62 A. 2d 9, where this Court said that to be a proper party the party ' "must have a direct interest in the subject-matter of the particular litigation, otherwise he can have no standing to appeal. And not only must the party desiring to appeal have a direct interest in the particular question litigated, but his interest must be immediate and pecuniary, and not a remote consequence of the judgment. The interest must also be substantial." '

. . .

"Part of the powers and duties of the Department of Banking, and in cases of mergers with resultant branch banking, part of the powers and duties of the

Banking Board, is to determine, as the Department and Board did in the present case, whether the community served and from which a bank draws its depositors and clients has adequate banking facilities and is not over-banked . . . '. . . the clear intention of the statute in regard to establishment of branches, both by new branch and by merger, is the same: to guard against "overbanking" on the one hand, and "underbanking" on the other; . . .' The legislature . . . did not exclude or intend to exclude competition between banks; it intended, inter alia, to exclude such competition as would likely weaken or destroy some banks in an overbanked community and thus weaken or injure the entire banking system, to the detriment of depositors, creditors, stockholders and the public alike."

Do the appellants in the instant case have a direct, immediate and substantial interest in the grant or refusal of a Small Loans License to Household Finance Corporation, or is the interest of each appellant merely a remote consequence of the Order or decision of the Secretary of Banking? Appellants rely on the cases hereinabove discussed and the test in the Small Loans Act, namely: "The Secretary of Banking shall have the power to reject an application for license, . . . if he is not satisfied that allowing such applicant to engage in business will *promote the convenience and advantage of the community* in which the business of the applicant is to be conducted . . . ." Appellants vigorously contend that this test or standard demonstrates that they have a direct, immediate and substantial interest in the grant or rejection of this license to a neighboring rival. To reach this result they contend that the language of the Small Loans Act equates small loan companies with banks and building and loan associations, thus placing them in the same legal status so far as an appeal is concerned. We cannot agree with this contention.

Neither the Banking Code nor the Building & Loan Code, nor the Department of Banking Code have any interconnection with the Small Loans Act—indeed the Department of Banking Code specifically provides that it "does not apply to, and does not affect any Act relating to" small loan companies. Moreover, the Secretary and the Department of Banking are excluded from the provisions of the Administrative Agency Law.* Banks and building and loan associations on the one hand are in some material respects very different from small loan companies.

The test or standard for the grant or refusal of a branch bank is whether the Department finds upon investigation that there is *a need* for banking services or facilities** such as are contemplated by the establishment of such branch: *Dauphin Deposit Trust Company v. Myers*, 401 Pa., supra. The Banking Code further provides that whenever the Department or the Banking Board is authorized to approve or disapprove a branch bank or any action of an institution under its supervision "it shall exercise such discretion in such manner as it deems necessary to insure the safe and sound conduct of the business of any institution subject to its supervision, to conserve its assets, *to maintain public confidence in the business of such institutions and to protect the public interest and the interests of depositors, other creditors, and shareholders thereof.*" Sec. 1 of the Act of July 3, 1957, P. L. 464, which amended the Act of May 15, 1953 by adding a new section after Section 13.

The Building and Loan Code of May 5, 1933, P. L. 457, as amended September 23, 1959, P. L. 981, Sec-

---

* Act of June 4, 1945, P. L. 1388, 71 PS §1710.51.

** Prior to the amendment of 1955 the test was whether the City, borough or other community in which such branch is to be established is without adequate banking facilities: *Philadelphia Saving Fund Society v. Banking Board*, 383 Pa., supra.

tion 1, contains virtually identical language: ". . . it shall exercise such discretion in such manner as it deems necessary to insure the safe and sound conduct of the business of any association subject to its supervision, to conserve its assets, *to maintain public confidence in the business of such associations and to protect the public interest and the interests of shareholders and other creditors* thereof." There is no such provision in the Small Loans Act. The Small Loans Act was enacted to fix interest rates and regulate money lenders, primarily in the interest of and for the protection of small or necessitous borrowers.

The *public interest* in the chartering, maintenance and preservation of sound banks and in a sound banking system is *paramount,* and is more direct, immediate, substantial and of far greater importance than the public interest in a small loans company. The vast sums of other people's money with which a bank and, to a lesser extent, a building and loan association is entrusted is in the nature of a public trust, whereas very little if any money of the public is invested in a small loans company which is incorporated and operated primarily for the benefit and profit of the owner or a few stockholders. We have seen that a small loans company can obtain a license only for a year and it must be renewed every year. A bank and a building and loan association obtain a charter to do business perpetually.

Importantly also, the Banking Code requires *a need* for the contemplated banking services or facilities; the Small Loans Act requires only that the branch promote the *convenience and advantage* of the community. As we said in *Delaware County National Bank v. Campbell,* 378 Pa., supra: ". . . the experience of 1933 which resulted in part from overbanking should not be forgotten. If a drug store or a large

department store should fail it would not adversely affect, but would probably benefit a drug store or large department store on the opposite corner of the street. This is not true in the banking world. If one or more banks fail in a community, 'runs' may and often do occur on other banks and the entire banking community will likely be shaken or destroyed to the injury of depositors, creditors, [the public], stockholders and the banking world alike."

A small loans company is like a drug store; if one fails on a corner of the street it will not injure or destroy, but will probably benefit another loan company which is on the opposite corner of the street or in the general neighborhood.

We have preferred to base this opinion on the broad grounds hereinabove set forth. However, we note that Household Finance Corporation was never joined as a party defendant in this case, as it should have been; and we have not discussed or decided whether the act of the Secretary of Banking in granting a Small Loans License to Household Finance Corporation was judicial in nature, i.e., judicial or quasi-judicial.

For the reasons hereinabove set forth, we are of the opinion (1) that the aforesaid material differences between banks and building and loan associations on the one hand and small loan companies on the other are sufficient to require a different legal conclusion with respect to their right to appeal—absent statutory authority; and (2) that a protesting small loans association has only a remote and not a direct, immediate and substantial interest in the grant or refusal of this license and hence has no legal status to appeal from an Order of the Department of Banking which grants a small loans license to an alleged competitor.

Appeals quashed.