Philadelphia Saving Fund Society, Appellant, *v.* Myers.

Argued January 15, 1962. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Charles J. Biddle,* with him *Robert S. Ryan, John
G. Williams,* and *Drinker, Biddle & Reath,* for appel-
lant.

*Frederic G. Antoun,* Deputy Attorney General, with
him *Richard M. Woodcock,* Assistant Attorney General,
and *David Stahl,* Attorney General, for appellees.

OPINION BY MR. CHIEF JUSTICE BELL, March 20,
1962:

The Philadelphia Saving Fund Society (hereinafter
referred to as "PSFS") has taken this appeal in the
nature of a certiorari from the Adjudication and Order
of the Banking Board of Pennsylvania. The Banking
Board *disapproved* the application of PSFS for the es-
tablishment of a branch bank *in the Borough of Media,*
Delaware County, and directed the Department of
Banking to disapprove the application which it had
originally approved. The certiorari in the instant case

is broad and upon review of such an appeal the Court considers the entire record, including all of the testimony: *Dauphin Deposit Trust Company v. Myers,* 401 Pa. 230, 235-236, 164 A. 2d 86; *Cumberland Valley Savings & Loan Association v. Myers,* 396 Pa. 331, 340, 153 A. 2d 466; *Philadelphia Saving Fund Society v. Banking Board,* 383 Pa. 253, 256, 118 A. 2d 561; *Delaware County National Bank v. Campbell,* 378 Pa. 311, 316, 317, 106 A. 2d 416.

Section 204.1B of the Banking Code of May 15, 1933* as added to and amended by the Act of December 30, 1955** pertinently provides that "Any institution . . . may establish and maintain branches . . . with the approval of the department and the Banking Board . . . in a county contiguous to the county in which the principal place of business of the institution proposing to take such action is located."

"Should the department find, after . . . investigation . . . that there is *not*** a *need for banking services or cilities* such as are contemplated by the establishment of such branch, it shall disapprove the application . . . .

". . . *the department, if it finds upon investigation that there is a need for banking services or facilities such as are contemplated by the establishment of such branch . . . shall approve such application* and forward it to the Banking Board for review. . . . The Banking Board, after such additional investigation or hearing as it may deem advisable, shall either approve or disapprove the action of the department. . . . The Decision of the Banking Board shall be binding upon the department."

In construing the Banking Code, "[t]he test or standard for the grant or refusal of a branch bank is whether . . . there is a *need* for banking services or fa-

---

* P. L. 624.

** P. L. 920, §3.

*** Italics throughout, ours.

cilities such as are contemplated by the establishment of such branch: Dauphin Deposit Trust Company v. Myers, 401 Pa. [230] supra." *Ritter Finance Company, Inc. v. Myers,* 401 Pa. 467, 165 A. 2d 246 (1960). See also *Cumberland Valley Savings and Loan Association v. Myers,* 396 Pa., supra.

"A decision of the Department of Banking or of the Banking Board will be sustained unless it is based upon facts or conclusions which are not adequately supported by the evidence, or it committed a clear abuse of discretion, or exceeded its power, or based its decision, conclusion or Order on an erroneous interpretation of the law: Delaware County National Bank v. Campbell, 378 Pa. 311, 106 A. 2d 416; Cumberland Valley Savings and Loan Association v. Myers, 396 Pa. 331, 153 A. 2d 466; Dauphin Deposit Trust Company v. Myers, 388 Pa. 444, 130 A. 2d 686; Philadelphia Saving Fund Society v. Banking Board of Pennsylvania, 383 Pa. 253, 118 A. 2d 561." *Dauphin Deposit Trust Company v. Myers,* 401 Pa. 230, 236, 164 A. 2d 86.

PSFS vigorously contends that (1) the facts do not support the findings and conclusions or Order of the Banking Board, and (2) the Board abused its discretion, and (3) the Board misconstrued the law. We shall therefore analyze, review and evaluate both the facts and the law, and quote extensively from the exhaustive and exceptionally able adjudication of the Board per Robert L. Myers, Jr., Chairman.

### The Evidence and the Banking Board's Findings

". . . PSFS, filed with the Department of Banking on June 29, 1960 its application for a Letter of Authority for the establishment of a branch office in the Borough of Media, Delaware County, Pennsylvania. The application was approved by the Department on August 19, 1960 and referred to the Banking Board for

review in accordance with the provisions of Section 204.1 of the Banking Code. The application was reviewed and considered by the Board at its meetings held September 7, 1960, February 15, 1961, May 9, 1961 and August 1, 1961.

"No objections to the application have been received by the Department or by the Banking Board.

"The hearing on the application was held before the Board in the offices of the Department on May 9, 1961." At the hearing Robert L. Myers, Jr., Secretary of Banking and Ex Officio Chairman of the Board and all members of the Board with one exception were present.

The Board, after reviewing and considering all the testimony and documentary evidence and the entire record, made 41 specific findings of fact together with additional findings of fact. We quote with approval the following findings of fact and conclusions of law:

"1. The Philadelphia Saving Fund Society is a mutual savings bank having its principal office and place of business in the City of Philadelphia . . . .

"27. PSFS was created under a Special Act of Assembly and conducts its business and operations subject to said Act and the appropriate provisions of the Banking Code. 

"2. PSFS applied to the Department of Banking on June 29, 1960 for a Letter of Authority for the establishment of a branch at the Northeast Corner of Baltimore Pike and Providence Road in the Borough of Media, Delaware County, . . . .

"3. Philadelphia County and Delaware County are contiguous Counties.

"4. The area that would be served by the proposed branch includes the Borough of Media and portions of Upper Providence, Middletown, Nether Providence and Springfield Townships of Delaware County. The branch would be located near the Southeasterly Corner of the Borough of Media and the service area includes the

area around the Borough extending 4½ miles East and West and 6 miles North and South. . . . The area to be served by the proposed branch is primarily residential and rural. The Borough of Media is the County seat of Delaware County and is the base of employment for a substantial number of Government employees. It is also the business and commercial center of the area. The land within the limits of the Borough is largely developed and built up.

"5. . . . Dwelling units in the area increased from 4,697 in 1940 to . . . 9,090 in 1960. The total retail sales in the Borough of Media were $22,000,000.00 in 1955 and $24,500,000.00 in 1958. There is little industrial activity in the area. The population of the area increased from . . . 19,147 in 1950 and 30,700 in 1960. The population of the Borough of Media increased from 5,-351 in 1940 to . . . 5,863 in 1960. The population of the whole of Delaware County increased from . . . 414,231 in. 1950 . . . and 553,154 in 1960, an increase of 34% from 1950. The population of the County is largely concentrated in the Eastern. and Southeastern portions of the County which are proximate to the City of Philadelphia. The service area of the proposed branch is *not* located in this densely populated part of the County.

. . .

"7. The proposed branch property will consist of an irregularly shaped tract of land of approximately 17,000 square feet in area with a depth of 113 feet from Baltimore Pike and 200 feet from Providence Road. The building will be a one-story masonry building containing approximately 1,500 square feet including two drive-up windows. The cost of the property and improvements will be approximately $130,000.00. Furniture and fixtures for the branch and other necessary equipment are estimated to cost $18,000.00.

"8. The Applicant estimates that operations of the proposed branch during the first year will result

in a loss of $37,126.00. The income is estimated at $107,736.00, the operating expenses, $48,486.00, interest on deposits, $96,376.00. . . . It is the expectation of the Applicant that the operation of the branch would be on a break-even basis in from three to five years.

"9. The Applicant proposes to furnish by means of the proposed branch the following services: Savings Accounts, Christmas and Vacation Club Accounts, Foreign Drafts, Travelers' Checks, Sale and Redemption of U. S. Government Savings Bonds, Bank Money Orders, Mortgage Loans and Payments on Mortgage Loans, Bank Book Loans, Drive-In Banking.

"10. The Applicant has submitted a statement showing growth of deposits, growth of mortgage investments, growth of surplus and reserves, earnings and allocation of earnings during the years 1955 through December 31, 1960, . . . .

"11. As of the date of the application, the Applicant had 1,500 savings accounts for a total of $3,450,000.00 and 240 mortgage accounts for a total of $2,161,212.00 with residents of the area proposed to be served by the branch. The total of mortgages held on Delaware County real estate was 5,076 for a total of $39,993,132.00. The record . . . shows that The Western Saving Fund Society, Beneficial Mutual Savings Bank, Girard Trust Corn Exchange Bank, Provident Tradesmens Bank and Trust Company and The Delaware County National Bank have a substantial volume of mortgage loans on real estate within the area.

. . .

"13. The Applicant pays interest on its savings accounts at the maximum permissible rate under Pennsylvania law of 3½%, calculated monthly and compounded annually. The over-all effective rate paid is 3.29%.

"14. The Applicant puts special emphasis upon its program for developing school savings accounts . . .

[but] [n]one of the schools in which such plans are in operation are in the service area of the proposed branch. Such school savings programs are not a branch function. . . .

"15. There are no mutual savings banks or branches of such banks within the area under consideration . . . .

"16. There are four incorporated commercial banks having eleven offices located and operating within or near to the area under consideration as follows:

Delaware County National Bank of Chester, Media Branch, located 6/10th mile from the proposed branch in the Central business section of Media, . . .

Provident Tradesmens Bank and Trust Company of Philadelphia, Media Branch, located 5/10th mile from the proposed branch in the Central business section of Media, . . .

The First Pennsylvania Banking and Trust Company of Philadelphia, Springfield Branch, 2¾ miles Northeast,

Girard Trust Corn Exchange Bank of Philadelphia, Lawrence Park Branch, 3½ miles Northeast, [together with additional branch offices].

. . .

"17. There are located in the Borough of Media in the area under consideration the following offices of savings and loan associations:

"1. Media Federal Savings and Loan Association . . . in the Central business section of Media, .7 mile from the proposed branch,

"2. Industrial Savings and Loan Association of Chester . . . Media Branch, 41 State Street in the Central business section of Media established May 10, 1960.

"18. The commercial banks listed in the foregoing Finding supply general commercial banking services *including the solicitation and servicing of savings accounts and mortgage loans.* The commercial banks pay

the maximum permissible rate of interest of 3% on savings accounts computed monthly and credited and compounded annually. . . .

. . .

"20.   All of the above listed commercial banks and mutual savings banks have substantial volumes of mortgage loans in Delaware County and within the area under consideration.   The rates of interest on such loans range from 4¾% to 6% and the terms from 15 years to 25 years.

. . .

"22.   All of the offices of commercial banks and mutual savings banks herein referred to have drive-in banking facilities [with five exceptions] . . .

"23.   All of the foregoing Institutions calculate interest on savings accounts on a reasonably comparable basis.   The principal difference on return to depositors is on the basis of rate, as hereinbefore set forth.

. . .

"25.   School savings programs are available to schools in the area under consideration by The Western Saving Fund Society, Provident Tradesmens Bank and Trust Company and Media Federal Savings and Loan Association. . . .

"26.   The Applicant does not propose to offer in the service area of its proposed branch any banking services which are not presently furnished within the area by commercial banks located within the area and which are not available from commercial banks and other mutual savings banks proximate to the area and whose normal service areas overlap substantially the service area of the proposed branch.   *Such services are adequate both in quantity and quality to meet the requirements of the area under consideration.*

. . .

"38.   The commercial banks, as a part of their operation, encourage thrift and receive savings on deposit and render all of the services contemplated by the pro-

posed branch with the exception of school savings programs as hereinbefore noted.

"39.  The savings and loan associations, as a part of their operations, encourage thrift and receive savings for investment in shares or share accounts and render complete savings and loan services, including savings, mortgage loan and share loan services.

"40.  Savings, mortgage and other services contemplated by the proposed branch are presently *adequately* furnished in the area under consideration by the commercial banks and mutual savings banks hereinbefore enumerated.

"41.  *There is no present need for the facilities and services contemplated by the proposed branch.*

### Conclusions of Law

"1.  The legislative policy of the Commonwealth of Pennsylvania in the matter of branch banking is restrictive.

"2.  Under the laws of Pennsylvania branch banking is permitted only where 'there is need for banking services or facilities such as are contemplated by the establishment of such branch'.  (Section 204.1 of the Pennsylvania Banking Code.)  'The Legislature . . . intended, inter alia, to exclude such competition (between banks) which would likely weaken or destroy some banks in an overbanked community and thus weaken or injure the entire banking system, to the detriment of depositors, creditors, stockholders and the public alike.'  (Delaware County National Bank v. Campbell, 378 Pa. 311.)

"3.  The Banking Code does not differentiate between commercial banks, bank and trust companies, trust companies and savings banks with respect to the requirements for establishing branch offices.  All such types of banking institutions are included within the term 'institution' as used in the Code and are subject

to the same requirement for establishing branches. No change in the Banking Code in this respect is made by the amendment of December 30, 1955.

"4. The criterion of need prescribed by the Banking Code relates to the quantity and quality of the facilities or services proposed to be supplied by a proposed branch, not to the character of corporate structure or character of organization of the institution proposing to establish the proposed branch.

"5. The term 'facilities or services' are broadly inclusive and embrace everything both tangible and intangible that will be made available by the institution proposing to establish the branch in order to supply the needs of the community for banking services. . . .

. . .

"16. PSFS, the Applicant, the commercial banks and the mutual savings banks referred to in this Adjudication would serve the needs of the area under consideration for savings and mortgage loans and savings account loans of the area in substantially the same manner by promoting thrift, paying interest on savings, making mortgage loans and loans on savings accounts.

"17. The differential of ½ of 1% between the interest paid by PSFS and the interest paid by the commercial banks operating in the area under consideration are not controlling factors in the determination of need for additional savings facilities in the area under consideration.

"18. On the basis of the evidence submitted for the consideration of the Department of Banking and the Banking Board and the law applicable thereto, the Board finds that *there is no need* in the area under consideration for the banking facilities and services contemplated by the branch application submitted by The Philadelphia Saving Fund Society."

Notwithstanding any differences between mutual savings banks—of which there are only 7 in Pennsyl-

vania—and commercial banks, it is incumbent upon an applicant which seeks approval to establish a branch bank, to prove a need for the contemplated services or facilities of the proposed branch in the area in question. See *Cumberland Valley Savings & Loan Association v. Myers*, 396 Pa., supra.

The question of whether there is a need for the services and facilities of an additional bank or branch is sometimes a delicate and difficult one. The dangers inherent in any situation which may possibly or likely create an overbanked area that may likely weaken or destroy some existing banks to the detriment of depositors, creditors, stockholders, and the public alike, must never be forgotten or minimized. In *Dauphin Deposit Trust Company v. Myers*, 401 Pa., the Court said (p. 241): " 'The Department of Banking was created not to manage or operate a bank but to supervise a bank, and to be a watchdog in the interests of depositors, creditors, shareholders and of the community in general . . . Part of the powers and duties of the Department of Banking . . . is to determine . . . whether the community served and from which a bank draws its depositors and clients has adequate banking facilities and is not overbanked . . . ". . . the clear intention of the statute in regard to establishment of branches, both by new branch and by merger, is the same: to guard against 'overbanking' on the one hand, and 'underbanking' on the other; . . .".' "

In *Delaware County National Bank v. Campbell*, 378 Pa., supra, we said, pp. 315, 328: ". . . The Board is composed of experienced and able bankers who should know, if anyone knows, the banking needs of the various communities in Pennsylvania and whether adequate banking facilities do or do not exist. . . .

"Where a Board is composed of able and experienced experts who are dealing with technical questions, a Court should be loath to find a clear abuse of discre-

tion upon a subject or subjects as to which they are far better qualified than any Court."

Appellant strongly relies upon *Philadelphia Saving Fund Society v. Banking Board of Pennsylvania,* 383 Pa., supra, often popularly referred to as the Ardmore case. In that case the Court pointed out some distinctions between a mutual savings bank and a commercial bank, and granted the savings bank a branch in Ardmore. That case is clearly distinguishable because that decision was based upon the following important differentiation: "The Banking Board did not find, however, that the banking facilities in the Ardmore community were adequate. All that it found with respect to the services. performed by the existing banks was 'That the aforesaid three banking institutions . . . and the branch office of The Pennsylvania Company for Banking and Trusts offer complete and well-rounded banking facilities, including savings account facilities, safe deposit boxes and mortgage loans . . . .' So much may be readily conceded, but *that is still a far cry from a finding that the available banking facilities are adequate to the needs and demands of 'the community' . . . .*"

In the instant case the Banking Board specifically found—and its findings were supported by ample evidence—that (1) The services and facilities which are now and can continue to be furnished by the present banking institutions *are adequate both in quantity and quality to meet all the requirements of the proposed area;* and (2) *There is no present need for the services or facilities which applicant proposes to furnish.* Findings of Fact numbers 26 and 41.

PSFS is a very large and ably managed savings bank; it pays ½ of 1% more interest on savings accounts than do commercial banks; and, perhaps most important of all, it not only promotes but it emphasizes thrift and savings. However, these are only some

of a large number of facts and factors which must be taken into consideration by the Department of Banking and the Banking Board.

As the Banking Board, in its Adjudication, said: "The evidence submitted to the Board on this subject [i.e., a comparison of services furnished in the area by existing commercial banks and existing savings and loan associations, with the services which the applicant proposes to furnish through its proposed branch] . . . does not show differences in the quantity and quality of such services that are so substantial as to justify a finding of need for the services and facilities proposed.

"This appears to be the nub of the present case. PSFS has not proven to the satisfaction of the Board that existing facilities and services of the nature which it proposes to furnish are not already furnished to the area under consideration in sufficient quantity and quality to supply the requirements of the area for such services. This Board definitely finds that:

" 'The Applicant does not propose to offer in the service area of its proposed branch any banking services which are not presently furnished within the area by commercial banks in the area and which are not available from commercial banks and other mutual savings banks proximate to the area and whose normal service areas overlap substantially the service area of the proposed branch. *Such services are adequate both in quantity and quality to meet the requirements of the area under consideration.*' "

The basic fallacy and misconception of PSFS lies in its position, premise or belief that because it is a mutual savings bank (of which there are, we repeat, only 7 in the entire Commonwealth) and particularly encourages and promotes thrift, and pays on savings deposits a slightly higher interest rate than commercial banks do, it is not only unique, but it is so unique that it is entitled to have a bank or a branch in every com-

munity that does not have a mutual savings bank. We completely disagree with such a position or premise and with any contention which would require such a conclusion.

Notwithstanding the able argument of counsel for PSFS, the evidence was amply sufficient to support and justify the findings of fact and the conclusions and the Order of the Banking Board, and we find no abuse of discretion or error of law.

Order affirmed; costs to be paid by appellant.